**Michael L. Tusken** (Cal. Bar No. 175715)
Law Offices of Michael L. Tusken
1510 West Whittier Boulevard, #42
La Habra, California 90631
Telephone: (562) 365-9465; Facsimile: (562) 252-8529
Michael@TuskenLaw.com

**Attorney for Plaintiffs John Akrabian and Marine (Marina) Akrabian**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

**JOHN AKRABIAN**, an individual; and **MARINE AKRABIAN**, also known as **MARINA AKRABIAN**, an individual,

Plaintiffs,

v.

**CALIFORNIA MORTGAGE ASSOCIATION**, a California nonprofit association; **UNITED TRUSTEES ASSOCIATION**, a nonprofit association; **WEST COAST 2015-4 LLC**, a limited liability company; **WEST COAST SERVICING, INC.**, a corporation; **ZBS LAW, LLP**, a California limited liability partnership; and **DOES 1 through 10**, inclusive,

Defendants.

Case No. 2:26-cv-01781

**COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF:**

(1)–(7) 42 U.S.C. § 1983 (U.S. Const. amends. I, VII, XIV);

(8)–(10) DECLARATORY JUDGMENT, 28 U.S.C. §§ 2201–2202 (Cal. Civ. Code § 2924.13);

(11) PETITION TO SET ASIDE TRUSTEE'S SALE (Cal. Civ. Code §§ 2924.13(g), 3412)

**DEMAND FOR JURY TRIAL**

Related Case: *Cal. Mortg. Ass'n v. Bonta*, No. 2:25-cv-02614-DAD-CKD (Drozd, J.) (Notice of Related Cases under L.R. 123 filed concurrently)

Notice of Constitutional Question under Fed. R. Civ. P. 5.1 filed concurrently

**TABLE OF CONTENTS**


INTRODUCTION ........ 11

STATEMENT OF PRESERVATION AND GOOD-FAITH BASIS ........ 13

PARTIES ........ 14

A. Plaintiffs ........ 14

B. Defendants ........ 15

JURISDICTION ........ 17

PERSONAL JURISDICTION AND VENUE ........ 20

RELATED CASES, JOINDER, AND CONSOLIDATION ........ 21

INCORPORATION OF DECLARATIONS AND EXHIBITS ........ 24

FACTUAL ALLEGATIONS ........ 25

A. The Home and the Second Loan ........ 25

B. The Default and the Acceleration of 2008 ........ 25

C. Ten Years of Silence, a Liquidation, and a Discharge ........ 26

D. The Loan Comes Back From the Dead ........ 27

E. The Zombie Foreclosure of October 16, 2019 ........ 28

F. The Unlawful-Detainer Court Completes the Taking ........ 29

G. The Quiet-Title Action and the Judgment That Decided Nothing ........ 30

H. The Concealed Acceleration, Discovered After the Judgment ........ 30

I. The Federal Action That Never Decided the Constitutional Question ........ 31

J. Section 2924.13 and the Crisis It Was Written to Cure ........ 32

K. The Industry's Counterattack and This Court's Non-Decision ........ 34

L. John Akrabian: Injured, Unheard, and Unbound ........ 36

THE CALIFORNIA LAW OF PRECLUSION: A DOCTRINE WITHOUT A RULE ........ 36

The Public-Interest Exception Cuts Both Ways ........ 38

CALIFORNIA'S FORECLOSURE-AND-EVICTION SCHEME IS STATE ACTION ........ 38

A. One Integrated State Procedure ........ 38

B. The State's Own Courts Describe the Policy ........ 40

C. Joint Participation With State Officials ........ 40

D. Pervasive Entwinement ........ 41

E. A Delegated Public Function ........ 42

F. Apao, Charmicor, and Garfinkle Do Not Govern, and Apao Was Wrongly Decided ........ 42

A COMPARATIVE PERSPECTIVE: PERSISTENCE IS THE RULE ELSEWHERE ........ 44

CLAIMS FOR RELIEF ........ 47

First Claim For Relief: 42 U.S.C. § 1983 — California's Preclusion Regime, as Applied to Plaintiffs, Is an Unconstitutional Prior Restraint on the Right to Petition (U.S. Const. amends. I, XIV; Cal. Const. art. I, §§ 2, 3) (Against ZBS and West Coast)....47

Second Claim For Relief: 42 U.S.C. § 1983 — The Preclusion Regime Is Facially Invalid Because It Conditions the Right to Petition on Standardless Judicial Discretion (U.S. Const. amends. I, XIV) (Against ZBS and West Coast)....48

Third Claim For Relief: 42 U.S.C. § 1983 — The Preclusion Regime Is Void for Vagueness (U.S. Const. amend. XIV; Cal. Const. art. I, § 7) (Against ZBS and West Coast)....48

Fourth Claim For Relief: 42 U.S.C. § 1983 — Due Process Forbids Preclusion Based on a Judgment That Adjudged Nothing and Was Procured by Concealment (U.S. Const. amend. XIV; Cal. Const. art. I, § 7; Cal. Civ. Proc. Code §§ 1911, 1916) (Against ZBS and West Coast)....49

Fifth Claim For Relief: 42 U.S.C. § 1983 — Preclusion From a Nonjury Adjudication Abridges the Right to Trial by Jury (U.S. Const. amends. VII, XIV; Cal. Const. art. I, § 16) (Against ZBS and West Coast)....50

Sixth Claim For Relief: 42 U.S.C. § 1983 — John Akrabian Is Bound by No Prior Judgment on the Claims Pleaded Here (U.S. Const. amend. XIV) (Against ZBS and West Coast)....51

Seventh Claim For Relief: 42 U.S.C. § 1983 — California's Integrated Nonjudicial-Foreclosure and Summary-Eviction Scheme, as Applied to Plaintiffs, Took Their Home Without Due Process and Without a Jury (U.S. Const. amends. VII, XIV; Cal. Const. art. I, §§ 7, 16) (Against West Coast and ZBS)....51

Eighth Claim For Relief: Declaratory Judgment (28 U.S.C. § 2201) — Civil Code Section 2924.13 Is Constitutional (U.S. Const. art. I, § 10; amend. XIV; Cal. Const. art. I, § 9) (Against ZBS and the Association Defendants)....52

Ninth Claim For Relief: Declaratory Judgment (28 U.S.C. § 2201) — Section 2924.13 Was Designed Around the Mortgage Crisis of 2005 Through 2010 and Reaches Back at Least Twenty Years (Against All Defendants)....55

Tenth Claim For Relief: Declaratory Judgment (28 U.S.C. § 2201) (Alternative) — Section 2924.13 Reaches Every Pre-Enactment Sale Conducted After the Limitations Period Expired, and as Intervening Law It Dissolves Any Prior Preclusion (Against All Defendants)....56

Eleventh Claim For Relief: Petition to Set Aside the October 16, 2019 Sale and Cancel the Trustee's Deed (Cal. Civ. Code §§ 2924.13(g), 3412) (Against ZBS, West Coast, and Does 1–10)....56

RESERVATION....57

PRAYER FOR RELIEF....57

DEMAND FOR JURY TRIAL....59

NOTICE UNDER RULE 5.1....59

INDEX OF EXHIBITS....60

CERTIFICATE OF SERVICE....61

# TABLE OF AUTHORITIES

**Cases — Supreme Court of the United States**


***Allen v. McCurry***, 449 U.S. 90 (1980)....................13
***Armstrong v. Manzo***, 380 U.S. 545 (1965)....................49
***Bantam Books, Inc. v. Sullivan***, 372 U.S. 58 (1963)....................47
***Barnitz v. Beverly***, 163 U.S. 118 (1896)....................54
***Bell v. Hood***, 327 U.S. 678 (1946)....................18
***Borough of Duryea v. Guarnieri***, 564 U.S. 379 (2011)....................47
***Bradley v. Sch. Bd. of Richmond***, 416 U.S. 696 (1974)....................56
***Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n***, 531 U.S. 288 (2001)....................41
***Bronson v. Kinzie***, 42 U.S. (1 How.) 311 (1843)....................53
***Cal. Motor Transp. Co. v. Trucking Unlimited***, 404 U.S. 508 (1972)....................47
***Chambers v. Balt. & Ohio R.R. Co.***, 207 U.S. 142 (1907)....................47
***City of Lakewood v. Plain Dealer Publ'g Co.***, 486 U.S. 750 (1988)....................38, 48
***Comm'r v. Sunnen***, 333 U.S. 591 (1948)....................14
***D.C. Ct. of Appeals v. Feldman***, 460 U.S. 462 (1983)....................13
***Dimick v. Schiedt***, 293 U.S. 474 (1935)....................50
***Energy Reserves Grp., Inc. v. Kan. Power & Light Co.***, 459 U.S. 400 (1983)....................53
***Ex parte Virginia***, 100 U.S. 339 (1880)....................41
***Ex parte Young***, 209 U.S. 123 (1908)....................19
***Exxon Mobil Corp. v. Saudi Basic Indus. Corp.***, 544 U.S. 280 (2005)....................13
***Federated Dep't Stores, Inc. v. Moitie***, 452 U.S. 394 (1981)....................13
***Flagg Bros., Inc. v. Brooks***, 436 U.S. 149 (1978)....................42
***Forsyth Cnty. v. Nationalist Movement***, 505 U.S. 123 (1992)....................38, 48
***Franchise Tax Bd. v. Constr. Laborers Vacation Tr.***, 463 U.S. 1 (1983)....................18
***Fuentes v. Shevin***, 407 U.S. 67 (1972)....................41
***Grayned v. City of Rockford***, 408 U.S. 104 (1972)....................48
***Hall v. Hall***, 584 U.S. 59 (2018)....................23
***Hansberry v. Lee***, 311 U.S. 32 (1940)....................36
***Hardin v. Straub***, 490 U.S. 536 (1989)....................52
***Hazel-Atlas Glass Co. v. Hartford-Empire Co.***, 322 U.S. 238 (1944)....................31
***Home Bldg. & Loan Ass'n v. Blaisdell***, 290 U.S. 398 (1934)....................53
***Jackson v. Metro. Edison Co.***, 419 U.S. 345 (1974)....................19, 41, 42
***Johnson v. United States***, 576 U.S. 591 (2015)....................48

***Kremer v. Chem. Constr. Corp.***, 456 U.S. 461 (1982)....13, 49
***Lance v. Dennis***, 546 U.S. 459 (2006)....20
***Landgraf v. USI Film Prods.***, 511 U.S. 244 (1994)....53
***Lawrence v. Texas***, 539 U.S. 558 (2003)....44
***Lindsey v. Normet***, 405 U.S. 56 (1972)....52
***Lugar v. Edmondson Oil Co.***, 457 U.S. 922 (1982)....13, 18, 19, 40, 41, 43, 44
***Mathews v. Eldridge***, 424 U.S. 319 (1976)....49, 51
***McDonald v. Smith***, 472 U.S. 479 (1985)....47
***MedImmune, Inc. v. Genentech, Inc.***, 549 U.S. 118 (2007)....19
***Medtronic, Inc. v. Mirowski Family Ventures, LLC***, 571 U.S. 191 (2014)....18
***Migra v. Warren City Sch. Dist. Bd. of Educ.***, 465 U.S. 75 (1984)....49
***Minneapolis & St. Louis R.R. Co. v. Bombolis***, 241 U.S. 211 (1916)....50
***Montana v. United States***, 440 U.S. 147 (1979)....14
***Near v. Minnesota ex rel. Olson***, 283 U.S. 697 (1931)....47
***Neb. Press Ass'n v. Stuart***, 427 U.S. 539 (1976)....47
***Parklane Hosiery Co. v. Shore***, 439 U.S. 322 (1979)....13
***Pennhurst State Sch. & Hosp. v. Halderman***, 465 U.S. 89 (1984)....36
***Pension Benefit Guar. Corp. v. R.A. Gray & Co.***, 467 U.S. 717 (1984)....54
***Richards v. Jefferson Cnty.***, 517 U.S. 793 (1996)....36
***Richmond Mortg. & Loan Corp. v. Wachovia Bank & Tr. Co.***, 300 U.S. 124 (1937)....53
***Rooker v. Fid. Tr. Co.***, 263 U.S. 413 (1923)....11, 13, 20
***Roper v. Simmons***, 543 U.S. 551 (2005)....44
***SEC v. Jarkesy***, 603 U.S. 109 (2024)....48, 50
***Sessions v. Dimaya***, 584 U.S. 148 (2018)....48
***Shelley v. Kraemer***, 334 U.S. 1 (1948)....13, 18, 19, 41
***Shuttlesworth v. City of Birmingham***, 394 U.S. 147 (1969)....38, 48
***Skelly Oil Co. v. Phillips Petroleum Co.***, 339 U.S. 667 (1950)....18
***Skinner v. Switzer***, 562 U.S. 521 (2011)....20
***State Farm Mut. Auto. Ins. Co. v. Duel***, 324 U.S. 154 (1945)....14
***Sveen v. Melin***, 584 U.S. 811 (2018)....53
***Taggart v. Lorenzen***, 587 U.S. 554 (2019)....57
***Taylor v. Sturgell***, 553 U.S. 880 (2008)....20, 36, 51
***Thorpe v. Hous. Auth. of Durham***, 393 U.S. 268 (1969)....56
***Tulsa Pro. Collection Servs., Inc. v. Pope***, 485 U.S. 478 (1988)....40

***United States v. Schooner Peggy***, 5 U.S. (1 Cranch) 103 (1801)....56

***Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.***, 455 U.S. 489 (1982)....49

***Whole Woman's Health v. Jackson***, 595 U.S. 30 (2021)....19

**Cases — Other Federal and State Courts**

***Adams v. Cal. Dep't of Health Servs.***, 487 F.3d 684 (9th Cir. 2007)....20

***Akrabian v. Veripro Sols., Inc.***, No. 2:23-cv-08709-DMG-AGR (C.D. Cal. Aug. 29, 2025), appeal docketed, No. 25-6099 (9th Cir. Sept. 26, 2025)....passim

***Apao v. Bank of N.Y.***, 324 F.3d 1091 (9th Cir. 2003)....13, 19, 42, 43

***Article 13, LLC v. LaSalle Nat'l Bank Ass'n***, No. 96, 2025 WL 3272351 (N.Y. Nov. 25, 2025)....53

***Bates v. Jones***, 131 F.3d 843 (9th Cir. 1997)....14, 37, 38

***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.)....passim

***Charmicor, Inc. v. Deaner***, 572 F.2d 694 (9th Cir. 1978)....43

***Dhillon v. ZBS Law, LLP***, No. 5:25-cv-02646-MCS-DTB, 2026 U.S. Dist. LEXIS 87150 (C.D. Cal. Apr. 13, 2026)....24

***Kougasian v. TMSL, Inc.***, 359 F.3d 1136 (9th Cir. 2004)....20, 31

***Lebbos v. Judges of Superior Ct.***, 883 F.2d 810 (9th Cir. 1989)....40

***Martinez v. Specialized Loan Servicing, LLC***, No. 2:24-cv-1387 WBS AC, 2025 U.S. Dist. LEXIS 214451 (E.D. Cal. Oct. 29, 2025)....24, 55

***Mobil Oil Corp. v. City of Long Beach***, 772 F.2d 534 (9th Cir. 1985)....18

***Noel v. Hall***, 341 F.3d 1148 (9th Cir. 2003)....20

***Roberts v. AT&T Mobility LLC***, 877 F.3d 833 (9th Cir. 2017)....19

***Sewell v. Franklin Credit Mgmt. Corp.***, No. 2:24-cv-1788-TLN-SCR, 2026 U.S. Dist. LEXIS 141358 (E.D. Cal. June 25, 2026), report and recommendation adopted, 2026 U.S. Dist. LEXIS 173215 (E.D. Cal. Aug. 4, 2026)....24, 55

***United States v. Ritchie***, 342 F.3d 903 (9th Cir. 2003)....24

***Walls v. Wells Fargo Bank, N.A.***, 276 F.3d 502 (9th Cir. 2002)....57

**Cases — California**

***Addison v. State***, 21 Cal. 3d 313 (1978)....52

***Arcadia Unified Sch. Dist. v. State Dep't of Educ.***, 2 Cal. 4th 251 (1992)....14

***Boeken v. Philip Morris USA, Inc.***, 48 Cal. 4th 788 (2010)....37

***Cheney v. Trauzettel***, 9 Cal. 2d 158 (1937)....29, 40

***City of Sacramento v. State***, 50 Cal. 3d 51 (1990)....14, 15, 37

***DKN Holdings LLC v. Faerber***, 61 Cal. 4th 813 (2015)....37

***Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n***, 43 Cal. 3d 1379 (1987)....33

***Evangelatos v. Superior Ct.***, 44 Cal. 3d 1188 (1988)....55

***F.E.V. v. City of Anaheim***, 15 Cal. App. 5th 462 (2017)....37

***Garfinkle v. Superior Ct.***, 21 Cal. 3d 268 (1978)....13, 42, 43, 44

***Greenfield v. Mather***, 32 Cal. 2d 23 (1948)....37

***I.E. Assocs. v. Safeco Title Ins. Co.***, 39 Cal. 3d 281 (1985)....39, 42

***Kulchar v. Kulchar***, 1 Cal. 3d 467 (1969)....31

***Lucido v. Superior Ct.***, 51 Cal. 3d 335 (1990)....32

***Malkoskie v. Option One Mortg. Corp.***, 188 Cal. App. 4th 968 (2010)....36

***In re Marriage of Park***, 27 Cal. 3d 337 (1980)....31

***McHugh v. Protective Life Ins. Co.***, 12 Cal. 5th 213 (2021)....55

***Moeller v. Lien***, 25 Cal. App. 4th 822 (1994)....39, 40

***Mycogen Corp. v. Monsanto Co.***, 28 Cal. 4th 888 (2002)....37

***Olivera v. Grace***, 19 Cal. 2d 570 (1942)....31

***People v. Frahs***, 9 Cal. 5th 618 (2020)....55

***Piedmont Cap. Mgmt., L.L.C. v. McElfish***, 94 Cal. App. 5th 961 (2023)....26

***Sierra Club v. Superior Ct.***, 57 Cal. 4th 157 (2013)....55

***Slater v. Blackwood***, 15 Cal. 3d 791 (1975)....37, 56

***Vella v. Hudgins***, 20 Cal. 3d 251 (1977)....36

***Villacres v. ABM Indus. Inc.***, 189 Cal. App. 4th 562 (2010)....37


**Cases — Foreign and Commonwealth Courts**


***Arnold v National Westminster Bank plc***, [1991] 2 AC 93 (HL)....44

***Cesareo***, Cass. ass. plén., July 7, 2006, No. 04-10.672 (Fr.)....45

***Danyluk v. Ainsworth Technologies Inc.***, 2001 SCC 44, [2001] 2 S.C.R. 460 (Can.)....45

***Henderson v Henderson***, (1843) 3 Hare 100, 67 Eng. Rep. 313 (V.-C.)....44

***Johnson v Gore Wood & Co***, [2002] 2 AC 1 (HL)....44

***Klausner v. Shimoni***, CA 246/66, 22(2) PD 561 (1968) (Isr.)....46

***Mathura Prasad Bajoo Jaiswal v. Dossibai N.B. Jeejeebhoy***, (1970) 1 S.C.C. 613 (India)....45

***Penner v. Niagara (Regional Police Services Board)***, 2013 SCC 19, [2013] 2 S.C.R. 125 (Can.)....45

***Takhar v Gracefield Developments Ltd***, [2019] UKSC 13, [2020] AC 450....44

***Virgin Atlantic Airways Ltd v Zodiac Seats UK Ltd***, [2013] UKSC 46, [2014] AC 160....44


**Constitutional Provisions**


U.S. Const. art. I, § 10....52, 53

U.S. Const. amend. I....38, 47, 48

U.S. Const. amend. VII.....50, 51
U.S. Const. amend. XIV.....passim
Cal. Const. art. I, §§ 2, 3, 7, 9, 16, 24.....47, 48, 49, 50, 51, 52

**Statutes**

28 U.S.C. § 1331.....17
28 U.S.C. § 1343(a)(3).....17, 35
28 U.S.C. § 1367(a).....18, 56
28 U.S.C. § 1391.....21
28 U.S.C. §§ 2201–2202.....18, 52, 55, 56, 59
28 U.S.C. § 2403(b).....17, 59
42 U.S.C. § 1983.....passim
42 U.S.C. § 1988.....38, 40, 55, 59
Cal. Civ. Code § 3.....55
Cal. Civ. Code § 882.020.....28
Cal. Civ. Code § 1788.14(d).....28
Cal. Civ. Code § 2924.....30, 39, 41, 51, 58
Cal. Civ. Code § 2924.13.....passim
Cal. Civ. Code § 3412.....56, 57, 58
Cal. Civ. Code § 3517.....49
Cal. Civ. Proc. Code § 335.1.....52
Cal. Civ. Proc. Code § 337.....26, 53, 56
Cal. Civ. Proc. Code § 352(a).....52
Cal. Civ. Proc. Code § 410.10.....21
Cal. Civ. Proc. Code §§ 715.010, 715.020.....30, 40, 51, 58, 59
Cal. Civ. Proc. Code § 726(a).....39, 42
Cal. Civ. Proc. Code § 1161a.....29, 36, 40, 44, 51, 58, 59
Cal. Civ. Proc. Code § 1167.....39, 51, 58, 59
Cal. Civ. Proc. Code § 1170.5.....39, 51, 58, 59
Cal. Civ. Proc. Code § 1179a.....39, 51, 58, 59
Cal. Civ. Proc. Code §§ 1908–1911.....passim
Cal. Civ. Proc. Code § 1916.....13, 49, 50
Cal. Com. Code § 3118.....26, 53, 56
Cal. Fin. Code §§ 378, 5301.....35
Cal. Gov't Code § 27280.....29, 39

Assemb. B. 130, 2025–2026 Reg. Sess., ch. 22, § 2 (Cal. 2025)....14

**Foreign Codes**

Code civil art. 1355 (Fr.)....45
Code de procédure civile art. 561 (Fr.)....45
Zivilprozessordnung §§ 322, 580 (Ger.)....45
Bürgerliches Gesetzbuch § 826 (Ger.)....45
Codice civile art. 2909 (It.)....46
Codice di procedura civile art. 395 (It.)....46
Código Federal de Procedimientos Civiles art. 354 (Mex.)....46
Constitución Política de los Estados Unidos Mexicanos arts. 17, 103, 107 (Mex.)....46
Code of Civil Procedure, 1908, § 11 (India)....45

**Rules**

Fed. R. Civ. P. 4(k)(1)(A)....21
Fed. R. Civ. P. 5.1....14, 17, 52, 59
Fed. R. Civ. P. 10(c)....24
Fed. R. Civ. P. 13(a)–(b)....24, 25, 32
Fed. R. Civ. P. 11(b)(2)....13
Fed. R. Civ. P. 17(c)....15
Fed. R. Civ. P. 19(a)(1)(B)(i)....23
Fed. R. Civ. P. 20(a)(2)....23
Fed. R. Civ. P. 38(b)....59
Fed. R. Civ. P. 42(a)....23, 59
Fed. R. Civ. P. 60(d)(3)....49
Fed. R. App. P. 4(a)(4)....23
Fed. R. Evid. 801(d)(2)(A)....36
E.D. Cal. L.R. 120(d)....21
E.D. Cal. L.R. 123....passim
E.D. Cal. L.R. 201....59
E.D. Cal. L.R. 202(a)....15

**Other Authorities**

*The Federalist No. 44* (James Madison) (Clinton Rossiter ed., 1961)....53
*The Federalist No. 51* (James Madison) (Clinton Rossiter ed., 1961)....11
*The Federalist No. 62* (James Madison) (Clinton Rossiter ed., 1961)....38
*The Federalist No. 78* (Alexander Hamilton) (Clinton Rossiter ed., 1961)....38

*The Federalist No. 83* (Alexander Hamilton) (Clinton Rossiter ed., 1961)............................50

Nat'l Bureau of Econ. Rsch., *Business Cycle Dating Committee Announcement* (Sept. 20, 2010)..........................................................................................................54

Sumit Agarwal et al., ***Holdup by Junior Claimholders: Evidence from the Mortgage Market*** (Nat'l Bureau of Econ. Rsch., Working Paper No. 20015, rev. Nov. 2017)..............34

Eliahu Harnon, ***Res Judicata and Identity of Actions—Law and Rationale***, 1 Isr. L. Rev. 539 (1966)..........................................................................................................46

Walter W. Heiser, ***California's Unpredictable Res Judicata (Claim Preclusion) Doctrine***, 35 San Diego L. Rev. 559 (1998)..........................................................................37

Oliver Wendell Holmes, ***The Path of the Law***, 10 Harv. L. Rev. 457 (1897)........................12

*Luke* 18:1–8 (King James)..........................................................................................11

Restatement (Second) of Judgments §§ 27, 28 (Am. L. Inst. 1982)................................14, 32

Antonin Scalia, ***The Rule of Law as a Law of Rules***, 56 U. Chi. L. Rev. 1175 (1989).........38

## INTRODUCTION

(1) This complaint asks one question in many forms. May a court close its doors forever to a petitioner whose first judgment decided nothing, whose adversaries withheld the decisive fact, and whose Legislature has since declared the wrong done to her unlawful? John and Marina Akrabian answer no. The Constitution of the United States and the Constitution of California answer no. The doctrines of res judicata, collateral estoppel, and ***Rooker-Feldman***, as California's courts and the federal courts sitting in California now apply them, answer yes. This complaint asks the Court to resolve that conflict in favor of the Constitutions. "Justice is the end of government. It is the end of civil society."[1]

(2) The Gospel of Luke records a parable about a widow and a judge. The judge "feared not God, neither regarded man." The widow "came unto him, saying, Avenge me of mine adversary." He refused. She returned. He refused again. She returned again. At last the judge relented: "because this widow troubleth me, I will avenge her, lest by her continual coming she weary me."[2] The parable does not rebuke the widow for returning. It rebukes the judge for refusing. Persistence in a just petition is a virtue. A rule that forbids every later petition, whatever new facts or new laws come to light, is not justice. It is censorship of the petitioner.

(3) Marina Akrabian is that widow in all but name. Her husband John still lives, but the loss of their home broke his health. She has petitioned four courts. The Los Angeles Superior Court dismissed her quiet-title action on a procedural default, without a trial, without findings, and without deciding anything.[3] The United States District Court for the Central District of California then held that this empty judgment barred every claim she could ever bring about the loss of her home. It held that it barred even her constitutional challenge to the doctrine that barred her.[4] That court's whole answer to her constitutional challenge was that res judicata has existed "since

1 *The Federalist No. 51*, at 324 (James Madison) (Clinton Rossiter ed., 1961).

2 *Luke* 18:2–5 (King James). The parable opens with its purpose: "that men ought always to pray, and not to faint." *Id.* 18:1.

3 M. Decl. ¶ 23; *see* Cal. Civ. Proc. Code § 1911.

4 M. Decl. ¶¶ 41–46.

Roman times."[5] Roman law also sanctioned slavery. Antiquity is not adjudication. As the late Justice Oliver Wendell Holmes wrote, "[i]t is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV."[6]

(4) This Court, in turn, dismissed the mortgage industry's attack on California Civil Code section 2924.13 on Eleventh Amendment grounds. It decided nothing about the statute. It denied the Akrabians' motion to intervene "as having been rendered moot."[7] Seven years, four courts, and no decision on the merits. That is the record. The Akrabians now bring their claims in an action of their own, so that this Court may decide them. The Akrabians name as Defendants the California Mortgage Association, the United Trustees Association, and ZBS Law, LLP, the three lead parties who asked this Court to void section 2924.13, together with the servicer and the investor that took their home. This Court has held that borrowers, not the State, enforce section 2924.13.[8] The industry's constitutional challenge to the statute can therefore be decided between real adversaries only in a case between borrowers and the lenders and trustees who resist it. This is that case.

(5) The Akrabians plead with serious intent. They ask this Court to declare that California's preclusion regime, as applied to them, is a prior restraint on the right to petition, denies due process of law, and abridges the right to trial by jury. They ask the Court to declare that John Akrabian is bound by no judgment on the claims pleaded here. They ask the Court to declare that Civil Code section 2924.13 is constitutional, that the Legislature designed it around the mortgage crisis of 2005 through 2010, and that it reaches back at least twenty years. They ask the Court to set aside the October 16, 2019 sale of their home under subdivision (g) of that statute. They state plainly, in the next section, that they will carry the constitutional questions to the Supreme Court of the United States if this Court and the Ninth Circuit do not resolve them.

---

5 ***Akrabian v. Veripro Sols., Inc.***, No. 2:23-cv-08709-DMG-AGR, slip op. at 3 (C.D. Cal. Aug. 29, 2025) (order denying reconsideration), *appeal docketed*, No. 25-6099 (9th Cir. Sept. 26, 2025).

6 Oliver Wendell Holmes, ***The Path of the Law***, 10 Harv. L. Rev. 457, 469 (1897).

7 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 51 at 6, 17 (June 4, 2026); *id.*, Dkt. 52 (judgment).

8 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 51 at 8.

**STATEMENT OF PRESERVATION AND GOOD-FAITH BASIS**

(6) Several claims below ask for the extension, modification, or reversal of existing law. Rule 11 permits such claims when a nonfrivolous argument supports them.[9] The Akrabians identify the adverse authority candidly, so that no court may later say a question was not preserved.

(7) The Akrabians contend that ***Parklane Hosiery Co. v. Shore*** was wrongly decided insofar as it permits a nonjury adjudication to extinguish a claim triable of right to a jury.[10] They contend that ***Federated Department Stores, Inc. v. Moitie*** does not bar a constitutional exception to preclusion.[11] They contend that ***Allen v. McCurry*** should be limited to judgments that in fact afforded a full and fair opportunity to litigate.[12] They contend that the ***Rooker-Feldman*** doctrine should be confined to its two namesake cases or abandoned.[13] They contend that the private defendants' invocation of California's preclusion statutes, and of its foreclosure-and-eviction procedure, enforced by courts and public officers, is state action under ***Lugar v. Edmondson Oil Co.*** and ***Shelley v. Kraemer***, and that the contrary decisions in ***Apao v. Bank of New York*** and ***Garfinkle v. Superior Court*** should be reconsidered. They acknowledge the contrary decisions of the Ninth Circuit discussed in the Jurisdiction section below.

(8) The Akrabians also plead claims that require no change in existing law. California's own statute denies preclusive effect to a judgment that adjudged nothing on its face.[14] California's own statute permits any judicial record to be impeached for "fraud in the party offering the record."[15] California's own decisions deny preclusion when the public interest requires

---

9 Fed. R. Civ. P. 11(b)(2).

10 ***Parklane Hosiery Co. v. Shore***, 439 U.S. 322, 333–37 (1979); *see id.* at 345–47 (Rehnquist, J., dissenting).

11 ***Federated Dep't Stores, Inc. v. Moitie***, 452 U.S. 394, 401 (1981).

12 ***Allen v. McCurry***, 449 U.S. 90, 95, 101 (1980); *see* ***Kremer v. Chem. Constr. Corp.***, 456 U.S. 461, 481–82 (1982).

13 ***Rooker v. Fid. Tr. Co.***, 263 U.S. 413, 415–16 (1923); ***D.C. Ct. of Appeals v. Feldman***, 460 U.S. 462, 482–86 (1983); *see* ***Exxon Mobil Corp. v. Saudi Basic Indus. Corp.***, 544 U.S. 280, 284 (2005).

14 Cal. Civ. Proc. Code § 1911.

15 *Id.* § 1916.

relitigation of a question of law.[16] And the Supreme Court has held for eighty years that res judicata "is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation."[17] In this case, the "first judgment[s]" are the state-court judgments of 2021 and the Central District's judgment of December 3, 2024. The "second" will be this Court's judgment in this action. Civil Code section 2924.13 is the change in the law that came between them. It took effect on June 30, 2025.[18]

## PARTIES

### A. Plaintiffs

(9) Plaintiff Marine Akrabian, also known as Marina Akrabian ("Marina"), is a natural person who resides in Lancaster, Los Angeles County, California.[19] With her husband she owned the residence at 1238 West Avenue H6, Lancaster, California 93534 (the "Home") from March 5, 2002 until the sale of October 16, 2019.[20]

(10) Plaintiff John Akrabian ("John") is a natural person who resides in Lancaster, California. He is Marina's husband and was a co-owner of the Home.[21] He did not sign the 2006 note.[22] He was not a party to Marina's quiet-title action, No. 19AVCV00854, or to her federal action, No. 2:23-cv-08709-DMG-AGR.[23] He was a named defendant in the unlawful-detainer action that followed the sale, and that court entered a judgment for possession and holdover damages

---

16 ***City of Sacramento v. State***, 50 Cal. 3d 51, 64 (1990); ***Arcadia Unified Sch. Dist. v. State Dep't of Educ.***, 2 Cal. 4th 251, 257–59 (1992); ***Bates v. Jones***, 131 F.3d 843, 846 (9th Cir. 1997) (en banc).

17 ***State Farm Mut. Auto. Ins. Co. v. Duel***, 324 U.S. 154, 162 (1945); *accord* ***Comm'r v. Sunnen***, 333 U.S. 591, 599–600 (1948); ***Montana v. United States***, 440 U.S. 147, 155 (1979); Restatement (Second) of Judgments § 28(2) (Am. L. Inst. 1982).

18 Assemb. B. 130, 2025–2026 Reg. Sess., ch. 22, § 2 (Cal. 2025) (codified at Cal. Civ. Code § 2924.13) (effective June 30, 2025).

19 M. Decl. ¶ 1 & p. 22.

20 *Id.* ¶¶ 3, 20.

21 J. Decl. ¶ 1.

22 *Id.* ¶ 2.

23 *Id.* ¶ 20; M. Decl. ¶ 40.

against him and Marina on March 12, 2021.[24] No court has adjudicated any claim of his on the merits.

(11) **Statement under Local Rule 202(a).** John Akrabian is an adult. The loss of the Home has caused him severe emotional distress, and he cannot discuss it without anguish.[25] He has nonetheless made his own declaration, retained counsel, and authorized this action. No guardian or conservator has been appointed for him. Plaintiffs submit that no appointment is necessary to ensure his adequate representation.[26] If the Court concludes otherwise, Plaintiffs will promptly move for the appointment of a guardian ad litem.

## B. Defendants

(12) Defendant California Mortgage Association ("CMA") is a California nonprofit association. By its own allegation to this Court, CMA "maintains its principal offices and place of business in the City of Sacramento, and conducts operations within this judicial district."[27] CMA describes itself as "a nonprofit trade association comprised of private lenders and brokers." Its members "make, arrange, sell, or service loans secured by deeds of trust on real property throughout the State of California," and they "include California lenders that originate and service loans secured by subordinate residential mortgages."[28] ZBS, the trustee that sold the Home, is a member of CMA.[29]

(13) CMA is the lead plaintiff in ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.). It sues there "in a representative capacity on behalf of [its] members, many of whom are directly and immediately subject to the challenged provisions of AB 130."[30] CMA alleges

24 M. Decl. ¶¶ 22–23, 40 & Ex. D.

25 M. Decl. ¶ 40; J. Decl. ¶¶ 28–29.

26 E.D. Cal. L.R. 202(a)(3); *see* Fed. R. Civ. P. 17(c).

27 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 14 ¶ 8; *see id.* ¶ 33 (CMA "resides and maintains [its] principal administrative offices . . . within the Sacramento Division of this judicial district").

28 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 57-3 ¶ 8 (proposed Second Am. Compl.).

29 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 14 ¶ 24.

30 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 57-3 ¶ 10.

that section 2924.13 injures those members through the "loss of foreclosure remedies" and "the taking of secured interests."[31] The Akrabians contend that the statute lawfully curtails those very remedies and interests. CMA asks this Court to declare section 2924.13 "null, void, and of no force or effect."[32] It alleges that the statute "cannot be applied retroactively to impair or affect the myriad of mortgage contracts and subordinate liens that existed before its passage."[33] The Second Loan is one of those subordinate liens. On July 2, 2026, CMA moved to reopen the judgment and to file a Second Amended Complaint that presses the same position.[34] CMA's claim that section 2924.13 is void, and void above all as to pre-enactment loans, is the precise legal claim that the Eighth through Tenth Claims ask this Court to reject. CMA therefore holds a legal interest directly adverse to Plaintiffs' on the validity and reach of the statute. It is also the Defendant whose residence anchors venue in this District.

(14) Defendant United Trustees Association ("UTA") is a nonprofit membership association of foreclosure trustees. By its own allegation, it "does business within this judicial district."[35] Its members "include trustees who foreclose on subordinate deeds of trust."[36] Its members include ZBS. UTA is a plaintiff in ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), and it joins CMA in asking this Court to declare section 2924.13 void. CMA and UTA are called the "Association Defendants."

(15) Defendant West Coast 2015-4 LLC ("WC 2015-4") is, on information and belief, a limited liability company that is a citizen of California, with its principal place of business at 7911 Warner Avenue, Huntington Beach, California 92647. It recorded an assignment of the beneficial interest in the Second Loan to itself on February 8, 2018. On information and belief, WC 2015-4 or an affiliate acquired the Home at the October 16, 2019 sale by credit bid.[37]

---

31 *Id.*

32 *Id.* ¶ 65; *see id.* ¶ 7.

33 *Id.* ¶ 64.

34 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 57.

35 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 14 ¶ 10.

36 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 57-3 ¶ 9.

37 M. Decl. ¶¶ 15, 20.

(16) Defendant West Coast Servicing, Inc. ("WCSI") is, on information and belief, a California corporation with its principal place of business at the same Huntington Beach address. WCSI claimed to own or service the Second Loan from 2018, filed a proof of claim in Marina's 2018 bankruptcy case, and brought the unlawful-detainer action against the Akrabians.[38] WCSI and WC 2015-4 are together called "West Coast."

(17) Defendant ZBS Law, LLP ("ZBS"), formerly Zieve, Brodnax & Steele, LLP, is a California limited liability partnership. Its principal place of business is 30 Corporate Park, Suite 450, Irvine, California 92606.[39] ZBS recorded the notice of default of May 8, 2018 and conducted the sale of October 16, 2019 as trustee.[40] ZBS is a member of both Association Defendants.[41] ZBS is also a plaintiff in ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), in which it asks this Court to declare section 2924.13 unconstitutional. ZBS thus stands on both sides of this case: it conducted the sale the statute condemns, and it seeks to void the statute that condemns it.

(18) Defendants Does 1 through 10 are persons or entities, unknown to Plaintiffs, that claim any right, title, or interest in the Home through the October 16, 2019 sale. Plaintiffs will amend to name them when they are identified.

(19) Plaintiffs seek no relief against any officer of the State of California. The Attorney General will receive notice of the constitutional questions presented here under Rule 5.1 and 28 U.S.C. § 2403(b).

## JURISDICTION

(20) **Federal question.** This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). The First through Seventh Claims arise under 42 U.S.C. § 1983 and the First, Seventh, and Fourteenth Amendments. They seek redress for the deprivation, under color of state law, of rights the Constitution secures. A federal court has jurisdiction over such claims unless

38 M. Decl. ¶¶ 15, 17, 22, 29 & Exs. B, C, H.

39 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 14 ¶ 24 (First Am. Compl.).

40 M. Decl. ¶¶ 15, 20 & Ex. K.

41 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 14 ¶ 24.

they are "wholly insubstantial and frivolous"; the possibility that a claim may fail on the merits does not defeat jurisdiction.[42]

(21) **Declaratory relief.** Plaintiffs seek declaratory relief under 28 U.S.C. §§ 2201 and 2202. The Declaratory Judgment Act supplies a remedy, not jurisdiction.[43] Jurisdiction here rests on the coercive federal claims Plaintiffs themselves hold under section 1983. Plaintiffs do not rest jurisdiction on any anticipated defense.[44]

(22) **Supplemental jurisdiction.** The Eighth through Eleventh Claims form part of the same case or controversy as the section 1983 claims. They concern the same sale, the same loan, the same parties, and the same defenses of preclusion. This Court has supplemental jurisdiction over them under 28 U.S.C. § 1367(a). That includes the Eighth Claim, which asks for a declaration that section 2924.13 is consistent with the Contract and Due Process Clauses.

(23) **State action.** The section 1983 claims challenge the constitutionality of California Code of Civil Procedure sections 1908 through 1911 and the preclusion doctrines built upon them. They do not allege a mere misuse of those statutes. The Supreme Court has held that "the procedural scheme created by the statute obviously is the product of state action," and that a private party who invokes it with the aid of state officials may be sued under section 1983 insofar as the plaintiff challenges the statute's constitutionality.[45] Res judicata operates only through courts. A preclusion defense has no force until a judge applies it. Judicial enforcement of a private party's claim is state action.[46] Defendants ZBS and West Coast invoked sections 1908 through 1911 against the Akrabians in the Superior Court in 2021 and in the Central District in 2024, and they will invoke them again against any petition under section 2924.13(g).[47]

---

42 ***Bell v. Hood***, 327 U.S. 678, 682–83 (1946).

43 ***Skelly Oil Co. v. Phillips Petroleum Co.***, 339 U.S. 667, 671–72 (1950).

44 *See* ***Franchise Tax Bd. v. Constr. Laborers Vacation Tr.***, 463 U.S. 1, 16, 19 (1983); ***Medtronic, Inc. v. Mirowski Family Ventures, LLC***, 571 U.S. 191, 197 (2014); ***Mobil Oil Corp. v. City of Long Beach***, 772 F.2d 534, 539 (9th Cir. 1985).

45 ***Lugar v. Edmondson Oil Co.***, 457 U.S. 922, 937, 941–42 (1982).

46 ***Shelley v. Kraemer***, 334 U.S. 1, 13–14 (1948).

47 M. Decl. ¶¶ 41–46 & Exs. N–P.

(24) Plaintiffs acknowledge the contrary authority. ***Lugar*** described its holding as "limited to the particular context of prejudgment attachment."[48] The Ninth Circuit has held that a private party does not become a state actor merely because the plaintiff frames the claim as a direct challenge to a statute,[49] and that a private nonjudicial foreclosure is not state action.[50] Neither decision involved a preclusion statute, which by its nature is enforced only by a court's judgment. Plaintiffs contend that ***Lugar*** and ***Shelley*** govern here, and, in the alternative, that they should be extended to preclusion statutes. That contention is preserved.

(25) **No state judge or officer is named.** Plaintiffs sue no judge, clerk, or state officer. The Supreme Court has held that state-court judges and clerks are not proper adverse parties in a challenge to a state law that private parties enforce in court.[51] This Court has held that section 2924.13 is enforced "by borrowers in state court civil proceedings" and that the Attorney General therefore lacks the enforcement connection ***Ex parte Young*** requires.[52] The proper adverse parties are the private parties who invoke preclusion and who conducted, and profited from, the sale. They are the Defendants here. No question of sovereign immunity arises.

(26) **Article III controversy.** An actual controversy exists between Plaintiffs and each Defendant. The parties hold "adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[53] ZBS and West Coast conducted and benefited from the sale that Plaintiffs seek to set aside, and they have invoked preclusion in every prior forum. ZBS and the Association Defendants ask this Court, in ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), to declare void the statute that supplies Plaintiffs' remedy, including as applied to completed sales.[54]

---

48 ***Lugar***, 457 U.S. at 939 n.21.

49 ***Roberts v. AT&T Mobility LLC***, 877 F.3d 833, 838–42 (9th Cir. 2017).

50 ***Apao v. Bank of N.Y.***, 324 F.3d 1091, 1093–94 (9th Cir. 2003).

51 ***Whole Woman's Health v. Jackson***, 595 U.S. 30, 39–40 (2021).

52 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 51 at 8; *see* ***Ex parte Young***, 209 U.S. 123, 157 (1908).

53 ***MedImmune, Inc. v. Genentech, Inc.***, 549 U.S. 118, 127 (2007).

54 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 14 ¶¶ 63–65; *id.*, Dkt. 57.

(27) **Rooker-Feldman does not apply.** The doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[55] This action does not seek review of any state-court judgment. The constitutional claims attack statutes and doctrines, not a judgment.[56] The fraud allegations attack Defendants' conduct, not a court's reasoning; "[e]xtrinsic fraud on a court is, by definition, not an error by that court."[57] The section 2924.13 claims rest on a statute that did not exist when any state judgment was entered. And the doctrine does not reach John's claims in any action to which he was not a party.[58] Preclusion, moreover, "is not a jurisdictional matter."[59]

(28) **No duplicative action.** A plaintiff may not maintain "two separate actions involving the same subject matter at the same time in the same court and against the same defendant."[60] This action is not duplicative. John was never a party to the Central District action. The section 2924.13 claims arise from a statute enacted after the Central District's judgment of December 3, 2024. The Association Defendants were not parties to that action. The constitutional claims pleaded here arise from Defendants' invocation of preclusion, which post-dates the judgments on which they rely.

**PERSONAL JURISDICTION AND VENUE**

(29) **Personal jurisdiction.** Every Defendant is a citizen of California or is organized or has its principal place of business in California. Each is subject to general personal jurisdiction in

---

55 ***Exxon Mobil***, 544 U.S. at 284.

56 ***Skinner v. Switzer***, 562 U.S. 521, 532 (2011); ***Feldman***, 460 U.S. at 482–86.

57 ***Kougasian v. TMSL, Inc.***, 359 F.3d 1136, 1140–41 (9th Cir. 2004); ***Noel v. Hall***, 341 F.3d 1148, 1164 (9th Cir. 2003).

58 ***Lance v. Dennis***, 546 U.S. 459, 466 (2006) (per curiam).

59 ***Exxon Mobil***, 544 U.S. at 293.

60 ***Adams v. Cal. Dep't of Health Servs.***, 487 F.3d 684, 688 (9th Cir. 2007), *overruled on other grounds by **Taylor v. Sturgell***, 553 U.S. 880, 904 (2008).

California and therefore in this Court.[61] ZBS, CMA, and UTA have also invoked this Court's jurisdiction on the very subject of this action, the validity and reach of section 2924.13.[62]

(30) **Venue under 28 U.S.C. § 1391(b)(1).** Venue lies in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."[63] Every Defendant resides in California. CMA resides in this District: its principal offices and place of business are in Sacramento, and it has so alleged to this Court.[64] An entity "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."[65] ZBS and UTA are also subject to personal jurisdiction in this District with respect to this action, because they chose this District to litigate the validity of section 2924.13. UTA also does business here.[66]

(31) **Venue under 28 U.S.C. § 1391(b)(2).** In the alternative, a substantial part of the events giving rise to the Eighth through Tenth Claims occurred in this District. The Legislature enacted section 2924.13 at the seat of government in Sacramento, as the Association Defendants themselves allege.[67] ZBS and the Association Defendants filed their attack on the statute here. The Attorney General filed his construction of its retroactive reach here.[68] This Court entered its order of June 4, 2026 here.

(32) **Intradistrict venue.** This action arises in Sacramento County within the meaning of Local Rule 120(d), and it is properly commenced in the Sacramento Division.[69]

## RELATED CASES, JOINDER, AND CONSOLIDATION

(33) This action is related to ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), assigned to the Honorable Dale A. Drozd. Both actions involve the validity and

---

61 Fed. R. Civ. P. 4(k)(1)(A); Cal. Civ. Proc. Code § 410.10.

62 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 14 ¶¶ 29–33.

63 28 U.S.C. § 1391(b)(1).

64 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 14 ¶¶ 8, 33.

65 28 U.S.C. § 1391(c)(2); *see id.* § 1391(d) (corporations in multi-district States).

66 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 14 ¶ 10.

67 *Id.* ¶ 33.

68 *Id.*, Dkt. 50 at 1 (Mar. 5, 2026).

69 E.D. Cal. L.R. 120(d).

reach of section 2924.13. Both involve ZBS, CMA, and UTA as adverse parties to the Akrabians. Both involve the question this Court left open on June 4, 2026: whether section 2924.13 is valid, and how far back it reaches. The Court entered judgment in that action on June 4, 2026.[70] The CMA Plaintiffs' motion under Rules 59(e) and 60(b) (Dkt. 57) is set for hearing on October 19, 2026. The Akrabians' motion under Rule 60(b) (Dkt. 59) is pending. Cross-appeals are pending as Nos. 26-4381 and 26-4383.

(34) Local Rule 123 applies to a related action "on file (whether or not dismissed or otherwise terminated)."[71] Plaintiffs are filing a Notice of Related Cases in each action. Under Local Rule 123(c), the judge assigned to the lower-numbered action may reassign this action to himself. Plaintiffs respectfully submit that assignment to Judge Drozd will save judicial effort, because the Court is already familiar with the statute, the parties, and the Eleventh Amendment ruling that shapes this action.

(35) **The June 4, 2026 order.** This Court's order of June 4, 2026 shapes this action. The Court held that section 2924.13 "provides for its enforcement by borrowers in state court civil proceedings" and that the statute "does not in any way authorize the defendant state attorney general to pursue a civil or administrative action in order to enforce the statute."[72] The Court therefore held the challenge barred by sovereign immunity and did not reach the merits.[73] The consequence is plain. No State officer is a proper defendant to a challenge to section 2924.13. The persons whose legal interests are adverse to the CMA Plaintiffs' claim of invalidity are the borrowers who invoke the statute. The Akrabians are such borrowers. The constitutional question that CMA, UTA, and ZBS placed before this Court can be decided between real adversaries in an action such as this one.

(36) **Joinder.** All Defendants are properly joined. Each claim against them arises out of the same series of transactions: the acceleration, dormancy, resurrection, and sale of the Second Loan, and the defense of that sale. Each presents common questions of law, above all the validity

70 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkts. 51, 52.

71 E.D. Cal. L.R. 123(b).

72 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 51 at 8.

73 *Id.* at 15–16.

and reach of section 2924.13.[74] The Akrabians also claim an interest relating to the subject of ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.). They are so situated that disposing of that action in their absence may "as a practical matter impair or impede" their ability to protect that interest.[75] A judgment voiding section 2924.13, obtained by the trustee that sold their home, would extinguish the remedy on which the Eleventh Claim rests. The Akrabians applied to intervene on February 13, 2026. The Court denied the motion "as having been rendered moot" when it dismissed the action.[76]

(37) **Consolidation.** When "actions before the court involve a common question of law or fact," the Court may "join for hearing or trial any or all matters at issue in the actions," "consolidate the actions," or "issue any other orders to avoid unnecessary cost or delay."[77] District courts "enjoy substantial discretion in deciding whether and to what extent to consolidate cases," and consolidated cases "retain their separate identities" for purposes of appeal.[78] This action and ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.) share a common question of law: whether section 2924.13 is consistent with the Contract, Due Process, Equal Protection, and Supremacy Clauses, and how far back it reaches. ZBS, CMA, and UTA take the same position on that question in both actions. The CMA Plaintiffs filed their motion under Rules 59(e) and 60(b) on July 2, 2026, within twenty-eight days after the judgment. This Court therefore retains jurisdiction to decide it despite the pending cross-appeals.[79]

(38) If the Court grants the CMA Plaintiffs' motion (Dkt. 57), or the Akrabians' motion under Rule 60(b) (Dkt. 59), and reopens ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Plaintiffs will move promptly to consolidate the two actions under Rule 42(a) and Local Rule 123. In the alternative, they will renew their motion to intervene. If that action remains closed, this action is the forum in which ZBS and the Association Defendants may

---

74 Fed. R. Civ. P. 20(a)(2).

75 Fed. R. Civ. P. 19(a)(1)(B)(i).

76 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 51 at 4, 17.

77 Fed. R. Civ. P. 42(a)(1)–(3).

78 ***Hall v. Hall***, 584 U.S. 59, 77 (2018); *see id.* at 66.

79 Fed. R. App. P. 4(a)(4)(A)(iv), (vi), (B)(i).

present their constitutional objections to section 2924.13, as defenses or counterclaims, against the borrowers the statute protects.[80] Plaintiffs met and conferred with counsel for the CMA Plaintiffs and the Attorney General in September 2026 before electing to proceed by independent action.

(39) **The question recurs.** Other borrowers have pleaded claims under section 2924.13 against West Coast and ZBS.[81] District courts have declined to apply the statute to pre-enactment conduct.[82] A single authoritative ruling, with the Legislature's purpose, the Attorney General's construction, and the industry's challenge all before one court, would serve every litigant and every court that confronts the question.

(40) Plaintiffs also disclose the following related proceedings outside this District: ***Akrabian v. Veripro Solutions, Inc.***, No. 2:23-cv-08709-DMG-AGR (C.D. Cal.), *appeal pending*, No. 25-6099 (9th Cir.); ***West Coast Servicing, Inc. v. Akrabian***, No. 19AVUD01582 (Cal. Super. Ct. L.A. Cnty.); ***Akrabian v. West Coast Servicing, Inc.***, No. 19AVCV00854 (Cal. Super. Ct. L.A. Cnty.); ***In re Akrabian***, No. 2:10-bk-61058-WB (Bankr. C.D. Cal.); ***In re Akrabian***, No. 2:18-bk-20780-WB (Bankr. C.D. Cal.); and ***In re Akrabian***, No. 2:19-bk-17688-VZ (Bankr. C.D. Cal.).

## INCORPORATION OF DECLARATIONS AND EXHIBITS

(41) The Declaration of Marina Akrabian under 28 U.S.C. § 1746, with its Exhibits A through P, is attached as **Exhibit 1** ("M. Decl."). The Declaration of John Akrabian under 28 U.S.C. § 1746, with its Exhibits Q and R, is attached as **Exhibit 2** ("J. Decl."). Both are incorporated by reference.[83] The factual allegations below rest on those declarations and exhibits. Where the

---

80 *See* Fed. R. Civ. P. 13(a)–(b).

81 ***Dhillon v. ZBS Law, LLP***, No. 5:25-cv-02646-MCS-DTB, 2026 U.S. Dist. LEXIS 87150, at *2, *6 (C.D. Cal. Apr. 13, 2026) (granting leave to add claim under section 2924.13 against Veripro Solutions, Inc., West Coast, and ZBS).

82 ***Martinez v. Specialized Loan Servicing, LLC***, No. 2:24-cv-1387 WBS AC, 2025 U.S. Dist. LEXIS 214451, at *11–12 (E.D. Cal. Oct. 29, 2025); ***Sewell v. Franklin Credit Mgmt. Corp.***, No. 2:24-cv-1788-TLN-SCR, 2026 U.S. Dist. LEXIS 141358, at *19 (E.D. Cal. June 25, 2026) (findings and recommendations), *report and recommendation adopted*, 2026 U.S. Dist. LEXIS 173215 (E.D. Cal. Aug. 4, 2026).

83 Fed. R. Civ. P. 10(c); ***United States v. Ritchie***, 342 F.3d 903, 908 (9th Cir. 2003).

declarants state a belief or a contention, it is pleaded as such. Allegations made on information and belief are so identified.

## FACTUAL ALLEGATIONS

### A. The Home and the Second Loan

(42) The Akrabians bought the Home on March 5, 2002, and lived there for nineteen years.[84] On March 24, 2006, they obtained a home equity line of credit from Countrywide Home Loans, Inc. ("Countrywide"), secured by a second deed of trust on the Home (the "Second Loan").[85] The Second Loan is a "subordinate mortgage" within the meaning of Civil Code section 2924.13(a)(3). The Akrabians made every payment from May 2006 through December 2007.[86]

### B. The Default and the Acceleration of 2008

(43) The Akrabians fell behind in January 2008. Countrywide told Marina that she would have to be in default to obtain a modification of the Second Loan.[87] On or about February 4, 2008, Countrywide issued a "Notice of Default and Acceleration" addressed to Marina and sent it by certified mail. It stated that if the default was not cured by March 5, 2008, the full amount would be accelerated, remain accelerated, and become due and payable in full.[88] The default was not cured. The entire balance became due on March 5, 2008.

(44) Marina does not recall receiving the letter in 2008. She first recognized it for what it was on July 22, 2021, when Nationstar Mortgage LLC produced it from the collateral file at her request.[89] No one ever told the Akrabians that the acceleration had been withdrawn. No evidence shows that the Second Loan was ever decelerated.[90]

---

84 M. Decl. ¶ 3.

85 *Id.* ¶ 4; J. Decl. ¶ 2.

86 M. Decl. ¶ 4.

87 *Id.* ¶ 5.

88 *Id.* ¶ 6 & Ex. A (with certified-mail receipt).

89 *Id.* ¶¶ 6, 8, 14, 25.

90 *Id.* ¶ 8.

(45) Acceleration fixed the maturity of the whole debt as of March 5, 2008. The four-year period for an action on a written contract expired on March 5, 2012.[91] The six-year period for a negotiable instrument, which runs "within six years after the accelerated due date," expired on March 5, 2014.[92] California measures limitations on an accelerated home-equity obligation from the creditor's exercise of its option to accelerate.[93]

**C. Ten Years of Silence, a Liquidation, and a Discharge**

(46) After March 5, 2008, Countrywide and its successors took no action on the Second Loan for ten years. They sent no letter, no statement, and no notice.[94] By contrast, Countrywide pursued the first loan and modified it in 2012.[95] The Akrabians received no transfer-of-servicing notice, no transfer-of-ownership notice, and no periodic statement concerning the Second Loan between 2008 and 2018.[96]

(47) The investor records show why. The Bank of New York Mellon investor report for the CWHEQ Home Equity Loan Trust, Series 2006-S4, lists the Second Loan (ending 5318) with a liquidation balance of $202,151.86, liquidation proceeds of $264.36, and a realized loss of $201,887.50 as of the October 26, 2009 distribution. Bloomberg data show a zero balance from October 2009 forward.[97] Nationstar's own screenshots show the account "Paid Off," with an unpaid balance of ".00."[98] Nationstar's transaction history shows "Principal Balance .00" and "Next Due 1/01/2008."[99]

(48) On November 30, 2010, the Akrabians filed a joint petition under Chapter 13, No. 2:10-bk-61058-WB. The case was converted to Chapter 7 in January 2011. They listed the Second

---

91 Cal. Civ. Proc. Code § 337(a). Once the period has run, "a person shall not bring suit or initiate an arbitration or other legal proceeding to collect the debt." *Id.* § 337(d).

92 Cal. Com. Code § 3118(a).

93 ***Piedmont Cap. Mgmt., L.L.C. v. McElfish***, 94 Cal. App. 5th 961, 964, 969–70 (2023).

94 M. Decl. ¶¶ 7, 9–10.

95 *Id.* ¶ 7; J. Decl. ¶ 7.

96 M. Decl. ¶ 35.

97 *Id.* ¶ 24 & Exs. E, F.

98 *Id.* ¶ 26 & Ex. G.

99 *Id.* ¶ 29 & Ex. I.

Loan. The bankruptcy court entered their discharge on April 20, 2011. They signed no reaffirmation agreement.[100]

(49) From about October 2013 to about June 2015, callers for Veripro Solutions, Inc. telephoned Marina about the Second Loan. They named sums from over $207,000 to $34,000 and threatened foreclosure. Marina told them each time that the debt had been discharged. None of them told her that the time to sue had run.[101]

**D. The Loan Comes Back From the Dead**

(50) Beginning about August 2017, West Coast sent letters demanding $333,415.01 or foreclosure.[102] On May 8, 2018, more than ten years after acceleration, ZBS recorded a Substitution of Trustee and a Notice of Default and Election to Sell as trustee for West Coast.[103] The Notice of Default demanded "[t]he monthly installment of principal and interest which became due on 1/1/2008 . . . and all subsequent monthly installments."[104] After acceleration no installments remained; the whole debt was due.

(51) On September 14, 2018, facing a sale date of September 17, Marina filed a Chapter 13 case, No. 2:18-bk-20780-WB.[105] On October 16, 2018, WCSI filed Proof of Claim No. 3-1, stamped "Loan Matures 2021," claiming principal of $207,415.31, interest of $131,538.24, fees and costs of $14,045.54, and a total of $352,999.09.[106] WCSI's "Beneficiary's Demand for Payoff" of October 15, 2018 demanded the same $352,999.09.[107] Its "Loan Reinstatement Calculation" claimed $158,011.56 in unpaid installments.[108] None of these filings disclosed the 2008 acceleration.

100 *Id.* ¶ 11 & Ex. J; J. Decl. ¶ 5.
101 M. Decl. ¶¶ 12–13.
102 J. Decl. ¶ 8.
103 M. Decl. ¶ 15 & Ex. K.
104 *Id.* ¶ 31 & Ex. K.
105 M. Decl. ¶ 17.
106 *Id.* ¶ 29 & Ex. H.
107 *Id.* ¶ 17 & Ex. B.
108 *Id.* ¶ 30 & Ex. B.

(52) On December 12, 2018, WCSI filed a supplemental brief with a declaration of its operations manager, Glenn Ohno, presenting four undated allonges to the note that had not appeared before. Marina believes those submissions were false.[109] Marina later dismissed that case to care for John, who needed major surgery.[110]

(53) On July 1, 2019, John filed his own Chapter 13 case, No. 2:19-bk-17688-VZ.[111] He underwent major surgery on August 22, 2019. Four days later, WCSI moved for relief from the automatic stay. The court denied John's request for time to recover, heard WCSI's motion on September 18, 2019, the day John received the denial, and barred the Akrabians from filing again for 180 days.[112]

## E. The Zombie Foreclosure of October 16, 2019

(54) On October 16, 2019, ZBS sold the Home at a nonjudicial foreclosure sale under the second deed of trust and recorded a trustee's deed.[113] On information and belief, the purchaser was WC 2015-4 or an affiliate of West Coast, which acquired the Home by credit bid with knowledge of the 2008 acceleration, the expired limitations periods, the 2009 liquidation, and the 2011 discharge. The purchaser was not a bona fide purchaser for value without notice.

(55) No certification of the kind now required by Civil Code section 2924.13(c) was recorded before the sale. None could have been; the certification requirement did not yet exist. On information and belief, no notice of intent to preserve the lien was recorded.[114] Before the sale, California law already required a debt collector to disclose in writing that it was collecting a time-barred debt. The Akrabians received no such disclosure.[115]

109 *Id.* ¶ 17 & Ex. C.

110 *Id.* ¶ 18.

111 J. Decl. ¶ 12.

112 *Id.* ¶¶ 13–16 & Exs. Q, R; M. Decl. ¶ 19.

113 M. Decl. ¶ 20; J. Decl. ¶ 17.

114 *See* Cal. Civ. Code § 882.020.

115 Cal. Civ. Code § 1788.14(d); M. Decl. ¶ 34; J. Decl. ¶ 24.

(56) The Akrabians lost equity that Marina calculates at $375,075.92. They were evicted on August 25, 2021. For more than five years they have lived in an apartment of less than 500 square feet.[116]

**F. The Unlawful-Detainer Court Completes the Taking**

(57) After the sale, WCSI sued John and Marina for unlawful detainer under Code of Civil Procedure section 1161a, ***West Coast Servicing, Inc. v. John Akrabian***, No. 19AVUD01582 (Cal. Super. Ct. L.A. Cnty.).[117] Section 1161a permits a purchaser to evict the former owner only where "the property has been sold in accordance with Section 2924 of the Civil Code . . . and the title under the sale has been duly perfected."[118] Title is "perfected" by recording the trustee's deed with the county recorder, a state officer.[119]

(58) The Akrabians demanded a jury. Marina filed Judicial Council form UD-150 requesting a jury trial on March 16, 2020, and paid the jury fee on January 14, 2021.[120] The Akrabians asked to have the case reclassified; the request was denied.[121] On March 12, 2021, the court ruled that the Akrabians had waived a jury, ordered the fee refunded, and proceeded with a bench trial.[122]

(59) The court's written ruling shows how the State's law, not merely the private parties, decided the case. The court described unlawful detainer as "summary in nature." It held that "[m]atters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are neither properly raised in this summary proceeding for possession, nor are they concluded by the judgment."[123] It then held that, because "[o]n its face, the Trustee's Deed appears to be statutorily-compliant," WCSI was "entitled to a presumption that the foreclosure sale was proper and valid," and it found "that the trustee's sale was properly

116 M. Decl. ¶¶ 20–21; J. Decl. ¶¶ 21–22.

117 M. Decl. ¶ 22.

118 Cal. Civ. Proc. Code § 1161a(b)(3).

119 M. Decl. Ex. D, Minute Order of Mar. 12, 2021, at 3 (citing Cal. Gov't Code § 27280).

120 M. Decl. ¶ 23 & Ex. D.

121 J. Decl. ¶ 19.

122 M. Decl. ¶ 23.

123 M. Decl. Ex. D at 3, 5 (quoting ***Cheney v. Trauzettel***, 9 Cal. 2d 158, 160 (1937)).

and validly conducted."[124] The presumption it applied is a creature of statute: a recital in a trustee's deed "shall constitute prima facie evidence of compliance" with the notice requirements "and conclusive evidence thereof in favor of bona fide purchasers."[125]

(60) The court entered judgment against John and Marina, jointly and severally, for possession and $38,533.52 in holdover damages, and granted "[r]estitution and possession of the premises."[126] The judgment was enforced by writ of possession. On information and belief, the Los Angeles County Sheriff, as levying officer, executed that writ on August 25, 2021, removed the Akrabians from the Home, and delivered possession to West Coast.[127] The court did not decide whether the Second Loan had been accelerated, whether any limitations period had run, or whether the lien survived. The State's summary procedure forbade it to do so.

**G. The Quiet-Title Action and the Judgment That Decided Nothing**

(61) In November 2019, Marina, without counsel, sued West Coast and ZBS to quiet title, No. 19AVCV00854. John was not a party.[128] The court sustained a demurrer with leave to amend and later dismissed the action for failure to amend. Marina states that she never received notice of the hearing or of any order to amend. On April 9, 2021, the court entered a judgment of dismissal. There was no trial, no summary judgment, and no ruling on any claim. The judgment contains no findings of fact and no conclusions of law.[129] Nothing "appears upon its face to have been so adjudged."[130]

**H. The Concealed Acceleration, Discovered After the Judgment**

(62) The date of acceleration decides this controversy. It starts every limitations clock. It proves that the 2019 sale came more than seven years after the four-year period expired.

---

124 *Id.* at 5; *see* Cal. Civ. Code § 2924(c).

125 Cal. Civ. Code § 2924(c).

126 M. Decl. Ex. D at 6–7.

127 *See* Cal. Civ. Proc. Code §§ 715.010, 715.020; J. Decl. ¶ 21; M. Decl. ¶ 20.

128 M. Decl. ¶ 22.

129 *Id.* ¶ 23.

130 Cal. Civ. Proc. Code § 1911.

Defendants held that fact in the collateral file and did not disclose it in the bankruptcy court, in the unlawful-detainer court, or in the quiet-title action.[131] In January 2025, a Veripro representative told Marina that Veripro lacked the staff to review every document in the files it transferred.[132]

(63) Marina obtained the acceleration letter on July 22, 2021, three months after the quiet-title judgment. She compared it with Covenant 17 of the deed of trust and understood that the whole debt had been called due in March 2008.[133] On October 6, 2021, ZBS and WCSI opposed her motion to set aside the judgment and invoked preclusion without disclosing the acceleration.[134] Concealment of decisive evidence that prevents a party from presenting her case is extrinsic fraud under California law and fraud on the court under federal law.[135]

## I. The Federal Action That Never Decided the Constitutional Question

(64) On October 16, 2023, Marina sued in the Central District.[136] Her First Amended Complaint devoted about thirteen pages and some twenty-three paragraphs to a single claim: that Code of Civil Procedure sections 1908 through 1911 violate the First, Fifth, Seventh, and Ninth Amendments on their face and as applied. It referred to the acceleration in more than twenty paragraphs and to its concealment repeatedly.[137] She moved to convert the motions to dismiss so that she could take discovery, moved to bifurcate the preclusion question, and asked for a guardian ad litem for John.[138]

(65) On December 3, 2024, the court dismissed the action with prejudice on res judicata and collateral estoppel. It did not address the constitutional challenge, the acceleration, or the

131 M. Decl. ¶¶ 25, 38.

132 *Id.* ¶ 38.

133 *Id.* ¶ 25.

134 First Am. Compl. ¶ 166 & Ex. J, ***Akrabian v. Veripro Sols., Inc.***, No. 2:23-cv-08709-DMG-AGR (C.D. Cal. Mar. 5, 2024), Dkt. 19.

135 ***Olivera v. Grace***, 19 Cal. 2d 570, 575 (1942); ***Kulchar v. Kulchar***, 1 Cal. 3d 467, 471–72 (1969); ***In re Marriage of Park***, 27 Cal. 3d 337, 342 (1980); ***Hazel-Atlas Glass Co. v. Hartford-Empire Co.***, 322 U.S. 238, 244–46 (1944); ***Kougasian***, 359 F.3d at 1140–41.

136 M. Decl. ¶ 41.

137 *Id.* ¶¶ 41–42 & Exs. N, O, P.

138 *Id.* ¶ 43.

concealment. It denied conversion and bifurcation and never ruled on the guardian-ad-litem request.[139] Marina moved under Rules 59(e) and 60(b) on December 31, 2024. While that motion was under submission, section 2924.13 took effect on June 30, 2025. On August 29, 2025, the court denied the motion without mentioning the new statute. Its only answer to the constitutional challenge was that res judicata is "an established principle of law since Roman times."[140] Marina appealed. The appeal is pending as No. 25-6099.[141]

(66) A ruling that a movant has not shown "manifest error" is a ruling about the standard for reconsideration. It is not a ruling on the merits of the constitutional question. A statement that a district court is bound by higher authority concedes, rather than decides, that the question belongs to the courts above. Issue preclusion attaches only to issues "actually litigated and determined."[142] The constitutional question was neither. A claim that a doctrine is unconstitutional as applied to a judgment could not have been raised in the action that produced the judgment. It arises only when the judgment is used.

**J. Section 2924.13 and the Crisis It Was Written to Cure**

(67) Section 2924.13 took effect on June 30, 2025. It defines "mortgage servicer" to include "the current mortgage servicer and any prior mortgage servicers."[143] It declares six practices unlawful "in connection with a subordinate mortgage." They include a servicer's failure to provide "any written communication regarding the loan . . . for at least three years"; its failure to give transfer-of-servicing and transfer-of-ownership notices; its failure to provide periodic statements; and conducting or threatening "a foreclosure sale after the applicable statute of

139 *Id.* ¶ 44.

140 *Id.* ¶¶ 45–46.

141 *Id.* ¶ 46.

142 Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982); *see* ***Lucido v. Superior Ct.***, 51 Cal. 3d 335, 341 (1990).

143 Cal. Civ. Code § 2924.13(a)(2).

limitations expired."[144] It forbids any nonjudicial foreclosure until a certification of compliance is recorded under penalty of perjury.[145]

(68) Subdivision (g) provides: "A borrower may also petition the court to set a nonjudicial foreclosure sale aside when a certification required by subdivision (c) was never recorded . . . ."[146] Subdivision (h) provides: "Any failure to comply with the provisions of this section shall not affect the validity of a trustee's sale or a sale in favor of a bona fide purchaser."[147] Every nonjudicial foreclosure sale is a trustee's sale. If subdivision (h) protected every trustee's sale, subdivision (g) would authorize petitions that could never be granted. Courts do not read one subdivision to nullify the next.[148] The only reading that gives effect to both is that the phrase "in favor of a bona fide purchaser" qualifies both kinds of sale.

(69) The statute's target is a class of loans with a known birthday. Defending the statute in this Court, the Attorney General explained that "[t]he Legislature specifically called out certain zombie mortgages that were originated prior to the 2008 financial crisis and declared its intent to protect borrowers from such mortgages."[149] His expert described zombie second mortgages as subordinate liens that "often originated prior to the 2008 financial crisis," lay "dormant from that time until recently," and "have been resurrected and are the subject of collection."[150] His economist found that zombie foreclosures "result in serious financial losses to borrowers, worsen borrowers' health, destabilize children, decrease house prices, and increase issues like homelessness and crime."[151] The Attorney General told this Court that a prospective-only reading would leave the borrowers the Legislature named "essentially entirely unprotected."[152]

---

144 *Id.* § 2924.13(b)(1)–(3), (5)–(6).

145 *Id.* § 2924.13(c).

146 *Id.* § 2924.13(g).

147 *Id.* § 2924.13(h).

148 ***Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n***, 43 Cal. 3d 1379, 1386–87 (1987).

149 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 50 at 1.

150 *Id.*, Dkt. 27-2 ¶ 11 (Decl. of Bernard Jay Patterson).

151 *Id.*, Dkt. 27-1 ¶ 10 (Decl. of Manisha Padi).

152 *Id.*, Dkt. 50 at 1.

(70) Every element of that description has a name and a face here. The Second Loan originated in 2006. It was accelerated in 2008. It was carried at zero from 2009. It lay dormant for a decade. It was resurrected in 2017 and 2018 and foreclosed in 2019.[153] Independent economists had described the same pattern: a servicer that approves a liquidation "effectively converts its second-lien loan into an unsecured claim."[154] The Akrabians are the borrowers the Legislature called out.

**K. The Industry's Counterattack and This Court's Non-Decision**

(71) On September 8, 2025, CMA, UTA, ZBS, and nine co-plaintiffs sued the Attorney General in this Court to have section 2924.13 declared unconstitutional, including as it reaches completed conduct.[155] ZBS, the trustee that sold the Home, thus asked this Court to nullify the statute that gives the Akrabians their remedy.

(72) The Akrabians applied to intervene on February 13, 2026.[156] The CMA Plaintiffs opposed. They argued that the Akrabians had attached no proposed complaint and told them that "[a]ny relief that Akrabians seek can be addressed in [the Ninth Circuit]."[157] On June 4, 2026, this Court dismissed the First Amended Complaint without leave to amend, because "§ 2924.13 provides for its enforcement by borrowers in state court civil proceedings." It denied intervention as moot.[158] This Court's own reasoning supplies the premise of this action. If borrowers are the statute's enforcers, the borrowers are the proper parties to litigate its validity and reach. The Akrabians are those borrowers.

(73) On July 2, 2026, the CMA Plaintiffs moved to reopen the judgment and lodged a proposed Second Amended Complaint that adds Kahlil Mohseni, Commissioner of the

---

153 M. Decl. ¶¶ 4–17, 20, 49; J. Decl. ¶¶ 8–17.

154 M. Decl. ¶ 39 & Ex. M (quoting Sumit Agarwal et al., ***Holdup by Junior Claimholders: Evidence from the Mortgage Market*** 8–9 (Nat'l Bureau of Econ. Rsch., Working Paper No. 20015, rev. Nov. 2017)). APA format: Agarwal, S., Amromin, G., Ben-David, I., Chomsisengphet, S., & Zhang, Y. (2017). *Holdup by junior claimholders: Evidence from the mortgage market* (NBER Working Paper No. 20015). National Bureau of Economic Research.

155 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 14 ¶¶ 63–65.

156 *Id.*, Dkts. 33, 34.

157 *Id.*, Dkt. 36 at 9.

158 *Id.*, Dkt. 51 at 8, 17.

Department of Financial Protection and Innovation ("DFPI"), as a defendant.[159] In it, ZBS, CMA, and UTA allege that the DFPI is "vested with the duty to promulgate, maintain and enforce regulations concerning the operations of . . . Residential Mortgage Lenders and Mortgage Servicers," including members of the Association Defendants.[160] They allege that Senate Bill 825 expanded the DFPI's power to regulate "unfair" or "unlawful" practices of lenders, servicers, and "other agents."[161] And they allege: "The State Attorney General and DFPI are charged with implementing and enforcing Section 2924.13."[162]

(74) The same pleading makes three further admissions. It concedes that "if a lender or servicer actually forgives a loan and issues a zero-balance statement to the borrower, the holder of that loan should not pursue collection."[163] Nationstar's own records showed the Second Loan "Paid Off" with an unpaid balance of ".00."[164] It describes a "zombie mortgage" as "a deed of trust that remains on title long after the statute of limitations has run on the underlying debt."[165] And it invokes 42 U.S.C. § 1983 and 28 U.S.C. § 1343 to challenge a state statute that regulates private foreclosures.[166] If a statute that restrains foreclosure is state action for the lender, a statutory scheme that enables and completes foreclosure is no less state action for the borrower.

(75) Plaintiffs do not name Commissioner Mohseni. This Court has already held that section 2924.13 "does not separately authorize the DFPI to enforce that statute," and that the DFPI may refer to the Attorney General only violations of the Financial Code or of laws carrying criminal penalties.[167] Plaintiffs seek no order compelling any state officer to enforce state law, which the

---

159 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 57; *id.*, Dkt. 57-3 (proposed Second Am. Compl.) ("SAC").

160 SAC ¶ 27.

161 *Id.* ¶ 28.

162 *Id.* ¶ 120.

163 *Id.* ¶ 38.

164 M. Decl. ¶ 26 & Ex. G.

165 SAC ¶ 35.

166 *Id.* ¶ 29.

167 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 51 at 15 (citing Cal. Fin. Code §§ 378, 5301).

Eleventh Amendment would forbid.[168] Plaintiffs plead the CMA Plaintiffs' allegations about the DFPI as admissions of a party-opponent, which bear on the State's pervasive involvement in the regulation of foreclosure.[169]

### L. John Akrabian: Injured, Unheard, and Unbound

(76) John co-owned the Home and lost it. The loss broke his health.[170] He was not a party to the quiet-title action or the Central District action, and no representative was appointed for him in either.[171] The Due Process Clause forbids binding a person by a judgment in litigation to which he was not a party, subject to narrow exceptions that do not apply here.[172] Marriage is not one of them. Co-ownership is not one of them.

(77) The unlawful-detainer judgment against John decided possession. An unlawful-detainer judgment ordinarily has limited preclusive effect because the proceeding is summary and confined to possession.[173] Plaintiffs acknowledge that one Court of Appeal gave a judgment under Code of Civil Procedure section 1161a preclusive effect on the regularity of a trustee's sale.[174] That rule cannot reach a claim created by a statute enacted four years after the judgment, a claim based on concealed facts, or a judgment entered after the court refused a jury that had been demanded and paid for.

## THE CALIFORNIA LAW OF PRECLUSION: A DOCTRINE WITHOUT A RULE

(78) The constitutional claims rest on a proposition that Plaintiffs plead as fact and as law: California's preclusion regime has no ascertainable content. No litigant can predict it. A rule that cannot be known cannot restrain a constitutional right.

---

168 ***Pennhurst State Sch. & Hosp. v. Halderman***, 465 U.S. 89, 106 (1984).

169 Fed. R. Evid. 801(d)(2)(A).

170 M. Decl. ¶ 40; J. Decl. ¶¶ 26–30.

171 J. Decl. ¶¶ 20, 30.

172 ***Taylor***, 553 U.S. at 891–95, 898–904; ***Richards v. Jefferson Cnty.***, 517 U.S. 793, 797–98 (1996); ***Hansberry v. Lee***, 311 U.S. 32, 40–41 (1940).

173 ***Vella v. Hudgins***, 20 Cal. 3d 251, 255–57 (1977).

174 ***Malkoskie v. Option One Mortg. Corp.***, 188 Cal. App. 4th 968, 973–74 (2010).

(79) The statute says one thing. Section 1911 confines preclusion to what "appears upon [the] face" of the judgment or was "actually and necessarily included therein."[175] The courts say another. They hold that a prior judgment is res judicata "on matters which were raised or could have been raised, on matters litigated or litigable."[176]

(80) The unit of preclusion is a "primary right." No one can define it. The leading scholar of California procedure concluded that the doctrine "is so unpredictable that it actually causes inefficient use of court and litigant resources," and that "the only sources of explanations are vague treatises and erratic court decisions."[177]

(81) The exceptions contradict one another. In 1948 the Supreme Court of California held that res judicata "will not be applied so rigidly as to defeat the ends of justice or important considerations of policy."[178] In 1975 it confined that holding.[179] In 1990 it held that a prior determination of a question of law "is not conclusive either if injustice would result or if the public interest requires that relitigation not be foreclosed."[180] In 1992 it applied that exception to a constitutional question.[181] In 1997 the en banc Ninth Circuit applied it to a question the Supreme Court of California had already decided, because the Supreme Court of the United States had since decided cases bearing on it.[182] In 2017 a Court of Appeal denied preclusive effect to a judgment that rested on a federal judgment later reversed.[183]

(82) James Madison warned against laws "so incoherent that they cannot be understood." He asked: "Law is defined to be a rule of action; but how can that be a rule, which is little known,

---

175 Cal. Civ. Proc. Code § 1911.

176 ***Villacres v. ABM Indus. Inc.***, 189 Cal. App. 4th 562, 576 (2010) (internal quotation marks omitted); *see* ***Mycogen Corp. v. Monsanto Co.***, 28 Cal. 4th 888, 896–97 (2002); *see* ***Boeken v. Philip Morris USA, Inc.***, 48 Cal. 4th 788, 797–98 (2010); ***DKN Holdings LLC v. Faerber***, 61 Cal. 4th 813, 824–25 (2015).

177 Walter W. Heiser, ***California's Unpredictable Res Judicata (Claim Preclusion) Doctrine***, 35 San Diego L. Rev. 559, 561, 563, 571 (1998).

178 ***Greenfield v. Mather***, 32 Cal. 2d 23, 34–35 (1948).

179 ***Slater v. Blackwood***, 15 Cal. 3d 791, 796–97 (1975).

180 ***City of Sacramento***, 50 Cal. 3d at 64.

181 ***Arcadia***, 2 Cal. 4th at 257–59.

182 ***Bates***, 131 F.3d at 845–46.

183 ***F.E.V. v. City of Anaheim***, 15 Cal. App. 5th 462 (2017).

and less fixed?"[184] Alexander Hamilton expected judges to be "bound down by strict rules and precedents, which serve to define and point out their duty in every particular case."[185] The late Justice Antonin Scalia made the same point: the rule of law must be "a law of rules."[186] A doctrine that binds the litigant while leaving the judge unbound inverts that design.

**The Public-Interest Exception Cuts Both Ways**

(83) As applied, the public-interest exception fits this case exactly. Whether sections 1908 through 1911 may constitutionally extinguish claims never litigated is a pure question of law. Whether section 2924.13 reaches pre-enactment sales is a pure question of law. Both affect every zombie-mortgage borrower in California. An intervening statute illuminates both, just as intervening decisions illuminated the question in ***Bates***. On its face, however, the exception condemns the regime. A restriction on a First Amendment right that turns on an official's unguided judgment about "injustice" or "the public interest" is the paradigm of an unconstitutional prior restraint.[187] If the exception is granted to the Akrabians, the regime is saved as applied to them. If it is denied, the denial proves the facial claim.

## CALIFORNIA'S FORECLOSURE-AND-EVICTION SCHEME IS STATE ACTION

(84) Plaintiffs contend that California's nonjudicial foreclosure and summary eviction laws, taken together, express and implement a pervasive state policy: the summary transfer of homes from their owners to creditors and purchasers, with the owner's objections to title postponed to a separate action that begins only after the home is gone. Plaintiffs plead that contention on the State's own statutes and on the words of its own courts.

### A. One Integrated State Procedure

(85) **The one-action rule.** In California, "[t]here can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property,"

184 *The Federalist No. 62*, at 381 (James Madison) (Clinton Rossiter ed., 1961).

185 *The Federalist No. 78*, at 471 (Alexander Hamilton) (Clinton Rossiter ed., 1961).

186 Antonin Scalia, ***The Rule of Law as a Law of Rules***, 56 U. Chi. L. Rev. 1175, 1178–80 (1989).

187 ***Shuttlesworth v. City of Birmingham***, 394 U.S. 147, 150–51 (1969); ***Forsyth Cnty. v. Nationalist Movement***, 505 U.S. 123, 130–31 (1992); ***City of Lakewood v. Plain Dealer Publ'g Co.***, 486 U.S. 750, 757–58 (1988).

and that action is a judicial one.[188] Nonjudicial foreclosure is the Legislature's statutory "alternative to judicial foreclosure."[189]

(86) **A comprehensive statutory framework.** "Civil Code sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust."[190] The Supreme Court of California has described that framework as legislation in which "course of conduct, parties, things affected, limitations and exceptions are minutely described," so that it supersedes the common law.[191]

(87) **State-conferred evidentiary force, immunity, and privilege.** The State converts the foreclosing party's own recitals into evidence that binds its courts: a recital of compliance in a trustee's deed "shall constitute prima facie evidence of compliance" and "conclusive evidence thereof in favor of bona fide purchasers."[192] It relieves the trustee of liability for good-faith error.[193] It makes the foreclosure notices and "[p]erformance of the procedures set forth in this article" privileged communications under Civil Code section 47.[194] Title passes only when the trustee's deed is recorded by a public officer.[195]

(88) **A summary eviction built for the purchaser.** The purchaser then evicts the owner through a special statutory proceeding. When WCSI sued the Akrabians in 2019, the owner had five days, excluding weekends and holidays, to respond; the period is now ten court days.[196] Trial must be held within twenty days of the request, and a writ of execution "shall be issued immediately."[197] The action takes "precedence over all other civil actions."[198] "[C]ross-

---

188 Cal. Civ. Proc. Code § 726(a).

189 ***I.E. Assocs. v. Safeco Title Ins. Co.***, 39 Cal. 3d 281, 288 (1985).

190 ***Moeller v. Lien***, 25 Cal. App. 4th 822, 830 (1994).

191 ***I.E. Assocs.***, 39 Cal. 3d at 285 (quoting 2A Sutherland, Statutory Construction).

192 Cal. Civ. Code § 2924(c).

193 *Id.* § 2924(b).

194 *Id.* § 2924(d).

195 *See* M. Decl. Ex. D at 3 (citing Cal. Gov't Code § 27280).

196 Cal. Civ. Proc. Code § 1167(a).

197 *Id.* § 1170.5(a).

198 *Id.* § 1179a.

complaints, countercomplaints, and affirmative defenses are inadmissible."[199] Title may not be tried except to the narrow extent section 1161a requires.[200] The writ is executed by the levying officer, who removes the occupants and delivers possession.[201]

### B. The State's Own Courts Describe the Policy

(89) The State's courts have described the purposes of this scheme in the order the State has ranked them: "(1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser."[202] The summary eviction that follows is "designed to facilitate owners in obtaining possession."[203] The owner's title defenses "are neither properly raised in this summary proceeding for possession, nor are they concluded by the judgment."[204]

(90) Plaintiffs contend that these features, operating together, describe a design, not an accident. The owner's home is sold without a hearing. The sale is then presumed valid on the seller's own recitals. The owner is removed by the sheriff after a summary trial in which her title defenses are inadmissible. Her remedy is a separate action that she must bring, without her home, after the fact. A maze with only one exit is not due process. Plaintiffs contend that the scheme, so understood, is confiscatory of private property in its operation, whatever its purpose in form.

### C. Joint Participation With State Officials

(91) "[W]hen private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found."[205] In ***Tulsa***, a nonclaim statute became state action because the probate court was "intimately involved throughout, and without that

---

199 ***Lebbos v. Judges of Superior Ct.***, 883 F.2d 810, 815 (9th Cir. 1989).

200 ***Cheney***, 9 Cal. 2d at 159–60.

201 Cal. Civ. Proc. Code §§ 715.010, 715.020.

202 ***Moeller***, 25 Cal. App. 4th at 830.

203 ***Lebbos***, 883 F.2d at 815.

204 ***Cheney***, 9 Cal. 2d at 160.

205 ***Tulsa Pro. Collection Servs., Inc. v. Pope***, 485 U.S. 478, 486 (1988) (citing ***Lugar***, 457 U.S. 922).

involvement the time bar is never activated."[206] The same is true here. Without the unlawful-detainer court, the statutory presumption of section 2924(c), the writ of possession, and the levying officer, a trustee's deed never removes anyone from a home.

(92) The Supreme Court has found state action wherever a creditor's remedy is executed through court process and public officers.[207] Judicial enforcement of a private instrument is itself state action.[208] "A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way."[209] Here all three acted: the Legislature wrote the presumption and the summary procedure, the court applied them and refused a jury, and the executive's levying officer took the Home.

**D. Pervasive Entwinement**

(93) State action exists where there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"[210] "[N]o one fact can function as a necessary condition across the board."[211] The State licenses and supervises the servicers and trustees who conduct foreclosures. By the CMA Plaintiffs' own allegation, the State's Attorney General and its DFPI are "charged with implementing and enforcing Section 2924.13."[212] The State writes the procedure, supplies the presumption, grants the immunity and the privilege, records the title, tries the eviction, and executes the writ. That is entwinement, not mere regulation.

---

206 *Id.* at 487.

207 ***Lugar***, 457 U.S. at 941–42 (writ of attachment executed by sheriff); ***Fuentes v. Shevin***, 407 U.S. 67, 70–71 (1972) (writ of replevin executed by sheriff).

208 ***Shelley***, 334 U.S. at 13–14.

209 ***Ex parte Virginia***, 100 U.S. 339, 347 (1880).

210 ***Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n***, 531 U.S. 288, 295 (2001) (quoting ***Jackson v. Metro. Edison Co.***, 419 U.S. 345, 351 (1974)).

211 *Id.* at 295.

212 SAC ¶ 120.

### E. A Delegated Public Function

(94) State action also exists where a private party exercises "powers traditionally exclusively reserved to the State."[213] California's one-action rule reserves the enforcement of real-property security to its courts; the power of sale exists only as a statutory exception to that rule.[214] Plaintiffs acknowledge that the Supreme Court held that "the settlement of disputes between debtors and creditors is not traditionally an exclusive public function" in a case about the sale of stored goods,[215] and that the Supreme Court of California rejected a public-function argument as to the power of sale in 1978.[216] The ***Flagg Bros.*** Court itself cautioned that creditor-debtor dispute resolution is not "a category of human affairs that is never subject to constitutional constraints."[217] The dispossession of a family from its home by a public officer is such a category.

### F. Apao, Charmicor, and Garfinkle Do Not Govern, and Apao Was Wrongly Decided

(95) **Apao on its own terms.** In ***Apao v. Bank of New York***, the Ninth Circuit held that a Hawaii nonjudicial sale was not state action. It stated the test: "What is required for state action in this area is 'overt official involvement' in the enforcement of creditors' remedies."[218] It recognized that foreclosures implicate the Fourteenth Amendment where there is "direct state involvement in the execution of the foreclosure or seizure."[219] And it noted that "the bar for state action is low."[220] Ms. Apao sued immediately after the sale and challenged the sale alone.[221] The Akrabians challenge the whole procedure, and the whole procedure includes a state court, a state-

213 ***Jackson***, 419 U.S. at 352.

214 Cal. Civ. Proc. Code § 726(a); ***I.E. Assocs.***, 39 Cal. 3d at 288.

215 ***Flagg Bros., Inc. v. Brooks***, 436 U.S. 149, 161–63 (1978).

216 ***Garfinkle v. Superior Ct.***, 21 Cal. 3d 268, 280–81 (1978).

217 ***Flagg Bros.***, 436 U.S. at 162 n.12.

218 ***Apao v. Bank of N.Y.***, 324 F.3d 1091, 1095 (9th Cir. 2003).

219 *Id.* at 1093.

220 *Id.* at 1095.

221 *Id.* at 1093.

created presumption, a writ, and a levying officer. Under ***Apao***'s own test, there was overt official involvement here.

(96) **Flagg Bros. is distinguishable.** ***Apao*** rested on ***Flagg Bros.***, where there was a "total absence of overt official involvement" because the city marshal who supervised the evictions had been dismissed from the case.[222] There, the State "merely announced the circumstances under which its courts will not interfere with a private sale."[223] Here, the State's courts do not stand aside. They intervene on the purchaser's side, with a presumption the Legislature wrote for the purchaser, in a proceeding the Legislature built to exclude the owner's defenses.

(97) **Apao was wrongly decided.** Plaintiffs contend that ***Apao*** erred in four respects, and they preserve each for the Ninth Circuit sitting en banc and for the Supreme Court. First, it examined the sale in isolation, although no nonjudicial sale can dispossess an owner who stays in her home without the State's eviction machinery. Second, it did not apply ***Tulsa***, which found state action where the probate court was "intimately involved throughout."[224] Third, it did not apply ***Brentwood***'s entwinement test, decided two years earlier. Fourth, it held that the statute "merely recognizes [the procedure's] legal effect,"[225] although the statute gives the foreclosing party's recitals evidentiary force in the State's courts that no ordinary contract enjoys. Plaintiffs also acknowledge ***Charmicor, Inc. v. Deaner***, 572 F.2d 694, 696 (9th Cir. 1978), which ***Apao*** followed, and the out-of-circuit decisions ***Apao*** collected, including one that found no state action notwithstanding a sheriff's involvement.[226]

(98) **Garfinkle predates Lugar and Tulsa.** In 1978 the Supreme Court of California rejected the argument that "when the nonjudicial foreclosure process is viewed as a whole, the state's involvement therein becomes apparent." It reasoned that a purchaser who sues in unlawful detainer is "like a party who has acquired rights under any other type of contract."[227] That

222 ***Flagg Bros.***, 436 U.S. at 157.

223 *Id.* at 166.

224 ***Tulsa***, 485 U.S. at 487.

225 ***Apao***, 324 F.3d at 1094.

226 ***Apao***, 324 F.3d at 1094 (citing ***Northrip v. Fed. Nat'l Mortg. Ass'n***, 527 F.2d 23, 28–29 (6th Cir. 1975)).

227 ***Garfinkle***, 21 Cal. 3d at 280.

premise fails. A party suing on an ordinary contract faces every defense the law allows. A purchaser suing under section 1161a faces none of the owner's title defenses, and wins on a statutory presumption drawn from its own seller's recitals. ***Garfinkle*** was decided four years before ***Lugar*** and ten years before ***Tulsa***. Plaintiffs contend that it should be reconsidered, and that, in any event, it does not bind this Court on a question of federal law.

(99) **The first element of Lugar is met without dispute.** Whatever the answer on the second element, "the procedural scheme created by the statute obviously is the product of state action."[228] Plaintiffs challenge that scheme, not a private misuse of it. WCSI invoked it, obtained a judgment and a writ under it, and caused a public officer to execute that writ. That is the posture in which ***Lugar*** found a valid claim under section 1983.[229]

## A COMPARATIVE PERSPECTIVE: PERSISTENCE IS THE RULE ELSEWHERE

(100) The Supreme Court has looked to the practice of other free nations as "respected and significant confirmation" of its own conclusions.[230] Plaintiffs offer the following for that purpose. No mature legal system treats a judgment as a permanent gag on the losing party. Every system keeps a door open for fraud, for changed law, or for injustice.

(101) **England.** The rule that a party must bring forward her whole case began with ***Henderson v Henderson***.[231] The United Kingdom Supreme Court now treats it as a discretionary doctrine of abuse of process, applied by a broad, merits-based judgment.[232] Issue estoppel yields to special circumstances, including a change in the law.[233] A judgment procured by fraud may be set aside without proof that the fraud could have been discovered earlier.[234]

---

228 ***Lugar***, 457 U.S. at 941.

229 *Id.* at 941–42.

230 ***Roper v. Simmons***, 543 U.S. 551, 578 (2005) (Kennedy, J.); *see* ***Lawrence v. Texas***, 539 U.S. 558, 576–77 (2003) (Kennedy, J.).

231 ***Henderson v Henderson*** (1843) 3 Hare 100, 67 Eng. Rep. 313 (V.-C.).

232 ***Virgin Atlantic Airways Ltd v Zodiac Seats UK Ltd*** [2013] UKSC 46, [2014] AC 160; ***Johnson v Gore Wood & Co*** [2002] 2 AC 1 (HL).

233 ***Arnold v National Westminster Bank plc*** [1991] 2 AC 93 (HL).

234 ***Takhar v Gracefield Developments Ltd*** [2019] UKSC 13, [2020] AC 450.

(102) **Canada.** Issue estoppel is discretionary even when every element is met. Its rules "should not be mechanically applied," so that the doctrine serves "the orderly administration of justice but not at the cost of real injustice in the particular case."[235]

(103) **India.** India codifies res judicata, including matters that "might and ought to have been made ground of defence or attack."[236] Yet its Supreme Court holds that the bar does not extend to pure questions of law, particularly where the law has changed.[237]

(104) **France.** The Civil Code confines the authority of a judgment to the same thing demanded, on the same cause, between the same parties in the same capacity.[238] Even after the Court of Cassation required a plaintiff to present all her legal grounds in the first action, the bar attaches only to the same demand on the same facts.[239] A French appeal "puts the thing adjudged back in question" on both fact and law.[240]

(105) **Germany.** A judgment has binding force only "insofar as the claim raised by the complaint or the counterclaim has been decided."[241] German law has no bar against claims that merely could have been brought. It provides an action to reopen a final judgment for fraud, false testimony, or forged documents, and it permits an attack on a judgment obtained by intentional and immoral means.[242]

---

235 ***Danyluk v. Ainsworth Technologies Inc.***, 2001 SCC 44, [2001] 2 S.C.R. 460, paras. 33, 67 (Can.); *see* ***Penner v. Niagara (Regional Police Services Board)***, 2013 SCC 19, [2013] 2 S.C.R. 125 (Can.).

236 Code of Civil Procedure, 1908, § 11 & expl. IV (India).

237 ***Mathura Prasad Bajoo Jaiswal v. Dossibai N.B. Jeejeebhoy***, (1970) 1 S.C.C. 613 (India).

238 Code civil [C. civ.] [Civil Code] art. 1355 (Fr.) ("L'autorité de la chose jugée n'a lieu qu'à l'égard de ce qui a fait l'objet du jugement. Il faut que la chose demandée soit la même; que la demande soit fondée sur la même cause; que la demande soit entre les mêmes parties, et formée par elles et contre elles en la même qualité.").

239 Cour de cassation [Cass.] ass. plén., July 7, 2006, No. 04-10.672 (Fr.) (***Cesareo***) ("il incombe au demandeur de présenter dès l'instance relative à la première demande l'ensemble des moyens qu'il estime de nature à fonder celle-ci").

240 Code de procédure civile [C.P.C.] art. 561 (Fr.) ("L'appel remet la chose jugée en question devant la juridiction d'appel.").

241 Zivilprozessordnung [ZPO] [Code of Civil Procedure] § 322(1) (Ger.) ("Urteile sind der Rechtskraft nur insoweit fähig, als über den durch die Klage oder durch die Widerklage erhobenen Anspruch entschieden ist.").

242 ZPO § 580 (Ger.); Bürgerliches Gesetzbuch [BGB] [Civil Code] § 826 (Ger.).

(106) **Italy.** The findings of a final judgment are "binding for every purpose between the parties, their heirs, or successors in interest."[243] Yet the Code of Civil Procedure permits revocation of a judgment procured by fraud or false evidence, or when decisive documents are later found.[244]

(107) **Mexico.** The Federal Code of Civil Procedure declares that "the thing adjudged is the legal truth, and against it no appeal or proof of any kind is admitted, except in the cases expressly determined by law."[245] Yet the Mexican Constitution guarantees justice from courts "expeditious in imparting it," and the writ of amparo checks any final judgment that violates a constitutional guarantee.[246]

(108) **Israel.** Israel has no statute of res judicata. Its courts developed the doctrine of *ma'aseh beit din*, "the act of the court," and administer it as a rule of equity subject to the demands of justice in the particular case.[247] Plaintiffs propose that formulation as the best guide for California and the United States.

(109) The lesson is uniform. Preclusion everywhere is a servant of justice, not its master. In each of these systems, a judgment procured by concealment of the decisive fact would be open to attack. In each, a new statute creating a new remedy would be applied. In none would a nonparty spouse be bound.

243 Codice civile [C.c.] art. 2909 (It.) ("L'accertamento contenuto nella sentenza passata in giudicato fa stato a ogni effetto tra le parti, i loro eredi o aventi causa.").

244 Codice di procedura civile [C.p.c.] art. 395 (It.).

245 Código Federal de Procedimientos Civiles [CFPC] art. 354 (Mex.) ("La cosa juzgada es la verdad legal, y contra ella no se admite recurso ni prueba de ninguna clase, salvo en los casos expresamente determinados por la ley.").

246 Constitución Política de los Estados Unidos Mexicanos, CP, arts. 17, 103, 107 (Mex.); Ley de Amparo, Diario Oficial de la Federación [DOF] 02-04-2013 (Mex.).

247 CA 246/66 ***Klausner v. Shimoni***, 22(2) PD 561 (1968) (Isr.); *see* Eliahu Harnon, ***Res Judicata and Identity of Actions—Law and Rationale***, 1 Isr. L. Rev. 539 (1966).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 — California's Preclusion Regime, as Applied to Plaintiffs, Is an Unconstitutional Prior Restraint on the Right to Petition (U.S. Const. amends. I, XIV; Cal. Const. art. I, §§ 2, 3) (Against ZBS and West Coast)

(110) Plaintiffs incorporate every preceding paragraph.

(111) The First Amendment forbids any law "abridging . . . the right of the people . . . to petition the Government for a redress of grievances."[248] California independently guarantees the right to "petition government for redress of grievances."[249] A lawsuit is a petition. The right of access to the courts is "one aspect of the right of petition."[250] "The right to sue and defend in the courts is the alternative of force."[251]

(112) "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."[252] Prior restraints "are the most serious and the least tolerable infringement on First Amendment rights."[253] Res judicata and collateral estoppel, as applied to Plaintiffs, are prior restraints on petitioning. They forbid a petition from being heard at all. They freeze every future petition about the Home, whatever new fact or new law arises, at the moment a clerk enters a judgment that decided nothing.

(113) The Petition Clause is not unlimited.[254] A State may punish sham litigation after a hearing and may impose neutral rules of procedure. It may not bar a petition never heard on the merits, on the basis of a judgment that adjudged nothing, procured by concealment of the decisive fact, and entered before the Legislature created the right now asserted. So applied, the restraint serves

248 U.S. Const. amend. I.

249 Cal. Const. art. I, § 3(a); *see id.* §§ 2(a), 24.

250 ***Cal. Motor Transp. Co. v. Trucking Unlimited***, 404 U.S. 508, 510 (1972); ***Borough of Duryea v. Guarnieri***, 564 U.S. 379, 387 (2011) (Kennedy, J.).

251 ***Chambers v. Balt. & Ohio R.R. Co.***, 207 U.S. 142, 148 (1907).

252 ***Bantam Books, Inc. v. Sullivan***, 372 U.S. 58, 70 (1963); *see* ***Near v. Minnesota ex rel. Olson***, 283 U.S. 697, 713–16 (1931).

253 ***Neb. Press Ass'n v. Stuart***, 427 U.S. 539, 559 (1976).

254 ***McDonald v. Smith***, 472 U.S. 479, 482–85 (1985).

no compelling interest and is not narrowly tailored. Finality is served by a merits adjudication, not by the perpetual suppression of a claim no court has examined.

(114) ZBS and West Coast have invoked sections 1908 through 1911 against the Akrabians in every forum and will do so against any petition under section 2924.13(g). Plaintiffs are entitled to a declaration that those statutes, and the doctrines built on them, cannot constitutionally be applied to bar the claims described in this complaint.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 — The Preclusion Regime Is Facially Invalid Because It Conditions the Right to Petition on Standardless Judicial Discretion (U.S. Const. amends. I, XIV) (Against ZBS and West Coast)**

(115) Plaintiffs incorporate every preceding paragraph.

(116) A law that subjects a First Amendment right to an official's prior approval, without "narrow, objective, and definite standards," is unconstitutional on its face.[255] Whether a later petition may be heard in California depends on whether a judge finds that "injustice would result," that "the public interest" requires relitigation, or that rigid application would "defeat the ends of justice." It depends on whether a judge finds the "primary right" the same. No statute supplies the standard. Section 1911 supplies the opposite standard, and the courts do not follow it.

(117) Plaintiffs are entitled to a declaration that sections 1908 through 1911, as construed and applied by the courts of California and the federal courts sitting in California, are unconstitutional on their face.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 — The Preclusion Regime Is Void for Vagueness (U.S. Const. amend. XIV; Cal. Const. art. I, § 7) (Against ZBS and West Coast)**

(118) Plaintiffs incorporate every preceding paragraph.

(119) Due process forbids a law "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."[256] The doctrine

255 ***Shuttlesworth***, 394 U.S. at 150–51; ***Forsyth Cnty.***, 505 U.S. at 130–31; ***City of Lakewood***, 486 U.S. at 757–58.

256 ***Johnson v. United States***, 576 U.S. 591, 595 (2015) (Scalia, J.); *see* ***Sessions v. Dimaya***, 584 U.S. 148, 155–56 (2018); ***Grayned v. City of Rockford***, 408 U.S. 104, 108–09 (1972).

applies with special force where a law "threatens to inhibit the exercise of constitutionally protected rights."[257] A California litigant cannot know, when she files her first action, what claims she will forfeit forever if it is dismissed on a procedural default. Plaintiffs are entitled to a declaration that the regime, as construed and applied, is unconstitutionally vague and cannot be applied to bar the claims described in this complaint.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 — Due Process Forbids Preclusion Based on a Judgment That Adjudged Nothing and Was Procured by Concealment (U.S. Const. amend. XIV; Cal. Const. art. I, § 7; Cal. Civ. Proc. Code §§ 1911, 1916) (Against ZBS and West Coast)

(120) Plaintiffs incorporate every preceding paragraph.

(121) A state judgment may not be given preclusive effect unless the state proceedings satisfied "the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause."[258] Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner."[259] Under California's own statutes, nothing was adjudged by the April 9, 2021 judgment, and the record is impeachable for "fraud in the party offering the record."[260] Under federal law, equity may set aside "fraudulently begotten judgments."[261] And "[n]o one can take advantage of their own wrong."[262]

(122) Plaintiffs are entitled to a declaration that neither the April 9, 2021 judgment in No. 19AVCV00854 nor any judgment resting upon it may, consistently with due process, be given preclusive effect against the claims described in this complaint.

---

257 ***Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.***, 455 U.S. 489, 499 (1982).

258 ***Kremer***, 456 U.S. at 481–82; *see* ***Migra v. Warren City Sch. Dist. Bd. of Educ.***, 465 U.S. 75, 81 (1984).

259 ***Mathews v. Eldridge***, 424 U.S. 319, 333 (1976) (quoting ***Armstrong v. Manzo***, 380 U.S. 545, 552 (1965)).

260 Cal. Civ. Proc. Code §§ 1911, 1916.

261 ***Hazel-Atlas***, 322 U.S. at 245; *see* Fed. R. Civ. P. 60(d)(3).

262 Cal. Civ. Code § 3517.

## FIFTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 — Preclusion From a Nonjury Adjudication Abridges the Right to Trial by Jury (U.S. Const. amends. VII, XIV; Cal. Const. art. I, § 16) (Against ZBS and West Coast)

(123) Plaintiffs incorporate every preceding paragraph.

(124) The Seventh Amendment provides that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."[263] It is the only textual source of finality in the Bill of Rights, and it protects the jury's verdict. California's Constitution declares: "Trial by jury is an inviolate right and shall be secured to all."[264] Hamilton recorded that the friends and adversaries of the Constitution agreed on the value of jury trial, the one side calling it "a valuable safeguard to liberty," the other "the very palladium of free government."[265] Any curtailment of the right "should be scrutinized with the utmost care."[266]

(125) The Akrabians demanded a jury and paid the fee. The unlawful-detainer court denied it.[267] The quiet-title action ended without any trial. Plaintiffs acknowledge ***Parklane***[268] and ***Minneapolis & St. Louis R.R. Co. v. Bombolis***.[269] They contend that ***Parklane*** does not reach an adjudication in which nothing was tried, that the California guarantee supplies the rule of its own force, and that ***Parklane*** should be reconsidered in light of the original understanding.[270] Plaintiffs are entitled to a declaration that no judgment rendered without a jury, after a jury was demanded, may be given preclusive effect against their claims triable of right to a jury.

---

263 U.S. Const. amend. VII.

264 Cal. Const. art. I, § 16.

265 *The Federalist No. 83*, at 499 (Alexander Hamilton) (Clinton Rossiter ed., 1961).

266 ***SEC v. Jarkesy***, 603 U.S. 109, 121 (2024) (quoting ***Dimick v. Schiedt***, 293 U.S. 474, 486 (1935)).

267 M. Decl. ¶ 23 & Ex. D.

268 ***Parklane***, 439 U.S. at 333–37.

269 241 U.S. 211, 217 (1916).

270 ***Parklane***, 439 U.S. at 345–47 (Rehnquist, J., dissenting); *see* ***Jarkesy***, 603 U.S. at 121–23.

**SIXTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 — John Akrabian Is Bound by No Prior Judgment on the Claims Pleaded Here (U.S. Const. amend. XIV) (Against ZBS and West Coast)**

(126) Plaintiffs incorporate every preceding paragraph.

(127) John was not a party to No. 19AVCV00854 or to No. 2:23-cv-08709. No exception to the rule against nonparty preclusion applies to him.[271] The unlawful-detainer judgment against him decided possession only and was entered after a demanded jury was refused. It could not decide a right created by section 2924.13 four years later. John is entitled to a declaration that none of those judgments bars the claims described in this complaint.

**SEVENTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 — California's Integrated Nonjudicial-Foreclosure and Summary-Eviction Scheme, as Applied to Plaintiffs, Took Their Home Without Due Process and Without a Jury (U.S. Const. amends. VII, XIV; Cal. Const. art. I, §§ 7, 16) (Against West Coast and ZBS)**

(128) Plaintiffs incorporate every preceding paragraph.

(129) Civil Code sections 2924 through 2924l, and in particular section 2924(c), together with Code of Civil Procedure sections 1161a, 1167, 1170.5, 1179a, 715.010, and 715.020, form one procedure by which the State transfers possession of a home from its owner to a foreclosure purchaser. That procedure is the product of state action. West Coast invoked it with the overt, significant assistance of the Superior Court and the levying officer, and ZBS supplied the trustee's deed and recitals on which it ran.

(130) As applied to Plaintiffs, the procedure deprived them of property without due process. It allowed the sale of their home on a lien that was time-barred, liquidated, and discharged, without any hearing. It then presumed the sale valid on the trustee's own recitals, excluded the Akrabians' title defenses, refused the jury they had demanded and paid for, and caused a public officer to remove them from their home. Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner."[272] A hearing that excludes the only defense that matters is not meaningful.

---

271 ***Taylor***, 553 U.S. at 893–95.

272 ***Mathews***, 424 U.S. at 333.

(131) Plaintiffs acknowledge ***Lindsey v. Normet***, which sustained summary eviction procedures against tenants whose landlord's title was undisputed.[273] The Akrabians were not tenants. They were owners whose title was the whole dispute. ***Lindsey*** itself struck down a feature of the Oregon scheme that burdened one class of defendants arbitrarily.[274]

(132) **Timeliness.** A section 1983 claim borrows California's two-year limitations period and its tolling rules.[275] The limitations period was equitably tolled while Marina pursued the same injury in the Superior Court and the Central District, each of which gave Defendants timely notice of her claims.[276] Plaintiffs further allege tolling under Code of Civil Procedure section 352(a) as to John for any period during which he lacked the legal capacity to make decisions. To the extent any claim for damages is barred, Plaintiffs seek declaratory relief as to the continuing effect of the procedure on their rights under section 2924.13(g).

(133) Plaintiffs are entitled to a declaration that the procedure described above, as applied to them, violated the Due Process Clause and the right to trial by jury. They are entitled to damages against West Coast and ZBS in an amount to be proved at trial, including their lost equity, which Marina calculates at $375,075.92, or, in the alternative, nominal damages.[277]

## EIGHTH CLAIM FOR RELIEF
### Declaratory Judgment (28 U.S.C. § 2201) — Civil Code Section 2924.13 Is Constitutional (U.S. Const. art. I, § 10; amend. XIV; Cal. Const. art. I, § 9) (Against ZBS and the Association Defendants)

(134) Plaintiffs incorporate every preceding paragraph.

(135) ZBS and the Association Defendants allege that section 2924.13 impairs the obligation of contracts, denies due process, and is preempted.[278] Plaintiffs hold the opposite view and have a concrete stake in it. The Contract Clause does not forbid a State to adjust the remedy of

---

273 ***Lindsey v. Normet***, 405 U.S. 56, 64–69 (1972).

274 *Id.* at 74–79.

275 Cal. Civ. Proc. Code § 335.1; ***Hardin v. Straub***, 490 U.S. 536, 539 (1989).

276 ***Addison v. State***, 21 Cal. 3d 313, 316–19 (1978).

277 M. Decl. ¶ 20.

278 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 14 ¶¶ 63–65.

foreclosure so long as a substantial remedy remains.[279] A statute that declares unlawful the foreclosure of a debt already time-barred impairs no obligation, because the law in force when the conduct occurred had already barred enforcement.[280] Madison's warning against "laws impairing the obligation of contracts" protects obligations, not the resurrection of obligations the law had extinguished.[281] A statute is not retroactive in the constitutional sense unless it "attaches new legal consequences to events completed before its enactment."[282] New York's highest court sustained a materially similar statute in 2025.[283]

(136) The Contract Clause inquiry asks first whether a law substantially impairs a contractual relationship. If it does, the inquiry asks whether the law is drawn in an "appropriate" and "reasonable" way to advance "a significant and legitimate public purpose."[284] A significant and legitimate public purpose includes "the remedying of a broad and general social or economic problem."[285] The question "is not whether the legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end."[286] And "where the protective power of the State is exercised in a manner otherwise appropriate in the regulation of a business it is no objection that the performance of existing contracts may be frustrated by the prohibition of injurious practices."[287] On that principle the Supreme Court sustained a mortgage moratorium applied to mortgages already in existence.[288] The CMA Plaintiffs rely on ***Bronson v. Kinzie***, 42

---

279 ***Richmond Mortg. & Loan Corp. v. Wachovia Bank & Tr. Co.***, 300 U.S. 124, 128–31 (1937).

280 Cal. Civ. Proc. Code § 337(d); Cal. Com. Code § 3118(a).

281 *The Federalist No. 44*, at 282 (James Madison) (Clinton Rossiter ed., 1961).

282 ***Landgraf v. USI Film Prods.***, 511 U.S. 244, 270 (1994).

283 ***Article 13, LLC v. LaSalle Nat'l Bank Ass'n***, No. 96, 2025 WL 3272351 (N.Y. Nov. 25, 2025).

284 ***Sveen v. Melin***, 584 U.S. 811, 819 (2018) (quoting ***Energy Reserves Grp., Inc. v. Kan. Power & Light Co.***, 459 U.S. 400, 411–12 (1983)).

285 ***Energy Reserves***, 459 U.S. at 411–12.

286 ***Home Bldg. & Loan Ass'n v. Blaisdell***, 290 U.S. 398, 438 (1934).

287 *Id.*

288 *Id.* at 444.

U.S. (1 How.) 311 (1843), and ***Barnitz v. Beverly***, 163 U.S. 118 (1896).[289] Those decisions predate ***Blaisdell*** and the modern two-step test. They do not control.

(137) Section 2924.13 is constitutional because it reaches the loans that caused the problem. That problem has a date of birth. The Legislature addressed subordinate mortgages made during the housing boom that preceded the financial crisis, which defaulted during the crisis and the recession that the National Bureau of Economic Research dates from December 2007 to June 2009.[290] They then lay dormant for years, until their holders revived them.[291] A second mortgage made after June 30, 2025 cannot lie dormant for a decade before the late 2030s. A statute confined to such loans would remedy nothing in this generation. The retroactive reach that CMA attacks is therefore not a defect in the statute. It is the statute's public purpose, and it is what makes the statute a reasonable and appropriate response to a broad and general economic problem. To strip that reach from the statute would sever it from the very purpose that sustains it.

(138) The same is true under the Due Process Clause. Retroactive economic legislation satisfies due process when "the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means."[292] That burden "is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose."[293] Protecting the borrowers whom zombie second mortgages actually threaten is such a purpose.

(139) Plaintiffs are entitled to a declaration that section 2924.13 is constitutional on its face and as applied to the sale of the Home.

---

289 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 57-3 ¶¶ 62–63.

290 Nat'l Bureau of Econ. Rsch., *Business Cycle Dating Committee Announcement* (Sept. 20, 2010), https://www.nber.org/news/business-cycle-dating-committee-announcement-september-20-2010 ("A trough in business activity occurred in the US economy in June 2009. The trough marks the end of the recession that began in December 2007."). APA format: National Bureau of Economic Research. (2010, September 20). *Business Cycle Dating Committee announcement*. https://www.nber.org/news/business-cycle-dating-committee-announcement-september-20-2010

291 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 27-2 ¶ 11 (zombie second mortgages "often originated prior to the 2008 financial crisis," lay "dormant from that time until recently," and "have been resurrected"); *id.*, Dkt. 50 at 1.

292 ***Pension Benefit Guar. Corp. v. R.A. Gray & Co.***, 467 U.S. 717, 729 (1984).

293 *Id.* at 730.

## NINTH CLAIM FOR RELIEF

### Declaratory Judgment (28 U.S.C. § 2201) — Section 2924.13 Was Designed Around the Mortgage Crisis of 2005 Through 2010 and Reaches Back at Least Twenty Years (Against All Defendants)

(140) Plaintiffs incorporate every preceding paragraph.

(141) The presumption against retroactivity "is a canon of statutory interpretation rather than a constitutional mandate." The Legislature may overcome it by clear implication, shown by the statute's purpose, history, and structure.[294] Plaintiffs acknowledge Civil Code section 3, ***Evangelatos v. Superior Court***, and the district-court decisions that declined retroactive application.[295]

(142) The purpose is not in doubt. The State's chief law officer told this Court that the Legislature "specifically called out certain zombie mortgages that were originated prior to the 2008 financial crisis."[296] Those loans were originated from 2005 through 2008, defaulted and were accelerated from 2008 through 2010, lay dormant through the 2010s, and were resurrected from about 2017. The text confirms the reach. Subdivision (a)(2) includes "any prior mortgage servicers." Subdivision (b) describes completed conduct in the past tense. Subdivision (g) authorizes a petition to set aside a completed sale for which a certification "was never recorded." A statute aimed at that class of loans cannot accomplish its purpose unless it reaches sales on loans made twenty years before its effective date. Neither ***Martinez*** nor ***Sewell*** addressed the Attorney General's statement to this Court that the Legislature "specifically called out" pre-2008 zombie mortgages.[297] ***Sewell*** reasoned that nothing in the statute permits a borrower to reverse a sale "based on conduct that did not violate the law at the time said conduct occurred."[298] Here,

---

294 ***People v. Frahs***, 9 Cal. 5th 618, 627 (2020); ***McHugh v. Protective Life Ins. Co.***, 12 Cal. 5th 213, 235 (2021); ***Sierra Club v. Superior Ct.***, 57 Cal. 4th 157, 166 (2013).

295 Cal. Civ. Code § 3; ***Evangelatos v. Superior Ct.***, 44 Cal. 3d 1188, 1207–09 (1988); ***Martinez***, 2025 U.S. Dist. LEXIS 214451, at *11–12; ***Sewell***, 2026 U.S. Dist. LEXIS 141358, at *19.

296 ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 50 at 1.

297 ***Martinez***, 2025 U.S. Dist. LEXIS 214451, at *11–12; ***Sewell***, 2026 U.S. Dist. LEXIS 141358, at *19; *cf.* ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD (E.D. Cal.), Dkt. 50 at 1 (filed Mar. 5, 2026).

298 ***Sewell***, 2026 U.S. Dist. LEXIS 141358, at *19.

the conduct did violate the law when it occurred. ZBS conducted the sale on a debt that the law in force had already barred.[299]

(143) Plaintiffs are entitled to a declaration that section 2924.13, and in particular subdivisions (b)(5) and (g), apply to any nonjudicial foreclosure sale under a subordinate mortgage conducted on or after June 30, 2005, where the purchaser was not a bona fide purchaser.

**TENTH CLAIM FOR RELIEF**
**Declaratory Judgment (28 U.S.C. § 2201) (Alternative) — Section 2924.13 Reaches Every Pre-Enactment Sale Conducted After the Limitations Period Expired, and as Intervening Law It Dissolves Any Prior Preclusion (Against All Defendants)**

(144) Plaintiffs incorporate every preceding paragraph.

(145) In the alternative, Plaintiffs seek a declaration that section 2924.13 applies to every nonjudicial foreclosure sale under a subordinate mortgage conducted before June 30, 2025 and after the applicable limitations period expired, where no certification was recorded and the purchaser was not a bona fide purchaser. Plaintiffs further seek a declaration that section 2924.13 is an intervening change in the law, so that no judgment entered before June 30, 2025 precludes a claim founded upon it.[300] Plaintiffs acknowledge ***Slater***, which concerned a judicial change in a tort rule.[301] It did not concern a Legislature's creation of a new statutory right. No judgment can adjudicate a right that did not exist when it was rendered.

**ELEVENTH CLAIM FOR RELIEF**
**Petition to Set Aside the October 16, 2019 Sale and Cancel the Trustee's Deed (Cal. Civ. Code §§ 2924.13(g), 3412) (Against ZBS, West Coast, and Does 1–10)**

(146) Plaintiffs incorporate every preceding paragraph.

(147) Plaintiffs are "borrower[s]" under section 2924.13. No certification required by subdivision (c) was ever recorded for the Second Loan. Subdivision (g) therefore authorizes them to petition "the court" to set the sale aside. This Court is a court of competent jurisdiction over this claim under 28 U.S.C. § 1367(a).

---

299 Cal. Civ. Proc. Code § 337(d); Cal. Com. Code § 3118(a).

300 ***Duel***, 324 U.S. at 162; ***Thorpe v. Hous. Auth. of Durham***, 393 U.S. 268, 281–82 (1969); ***Bradley v. Sch. Bd. of Richmond***, 416 U.S. 696, 711 (1974); ***United States v. Schooner Peggy***, 5 U.S. (1 Cranch) 103, 110 (1801).

301 ***Slater***, 15 Cal. 3d at 796–97.

(148) The servicers of the Second Loan committed the unlawful practices described in subdivisions (b)(1), (2), (3), (5), and (6). They sent no written communication for more than three years. They gave no transfer-of-servicing or transfer-of-ownership notice. They sent no periodic statement. And ZBS conducted the sale more than seven years after the limitations period expired.[302]

(149) Subdivision (h) does not protect the sale. The purchaser took by credit bid, with notice of the acceleration, the expired limitations periods, the liquidation, and the discharge. It was not a bona fide purchaser. A recorded instrument that is void or voidable and would cause serious injury if left outstanding may be cancelled.[303]

(150) Plaintiffs are entitled to an order setting aside the October 16, 2019 sale, cancelling the trustee's deed, and granting the equitable relief that section 2924.13 and Civil Code section 3412 permit. If the Home has passed to a bona fide purchaser, Plaintiffs seek restitution of their lost equity from ZBS and West Coast as the equitable substitute.

**RESERVATION**

(151) Plaintiffs reserve their right to seek contempt remedies for violation of the discharge injunction of April 20, 2011 in the bankruptcy court that issued it. The Ninth Circuit has held that the remedy lies in contempt, not in an independent action.[304]

**PRAYER FOR RELIEF**

(152) WHEREFORE, Plaintiffs John Akrabian and Marina Akrabian pray for judgment against Defendants as follows:

A. A declaration that California Code of Civil Procedure sections 1908 through 1911, and the doctrines of res judicata and collateral estoppel built upon them, cannot constitutionally be applied to bar the claims described in this complaint;

---

302 M. Decl. ¶¶ 9, 13, 15, 32, 35, 47.

303 Cal. Civ. Code § 3412.

304 ***Walls v. Wells Fargo Bank, N.A.***, 276 F.3d 502, 504, 507 (9th Cir. 2002); *see* ***Taggart v. Lorenzen***, 587 U.S. 554, 557 (2019).

B. A declaration that the same statutes and doctrines, as construed and applied, are unconstitutional on their face as standardless prior restraints on the right to petition and as void for vagueness;

C. A declaration that the April 9, 2021 judgment in No. 19AVCV00854, the March 12, 2021 judgment in No. 19AVUD01582, and the December 3, 2024 judgment in No. 2:23-cv-08709 have no preclusive effect against John Akrabian on the claims pleaded here, and none against Marina Akrabian's claims founded on section 2924.13 or on the concealment of the 2008 acceleration;

D. A declaration that California's nonjudicial-foreclosure and summary-eviction procedure (Cal. Civ. Code §§ 2924–2924l; Cal. Civ. Proc. Code §§ 715.010, 715.020, 1161a, 1167, 1170.5, 1179a), as applied to Plaintiffs, is state action and deprived them of their home without due process of law and without trial by jury;

E. Damages under 42 U.S.C. § 1983 against West Coast and ZBS in an amount to be proved at trial, including Plaintiffs' lost equity, or, in the alternative, nominal damages;

F. A declaration that Civil Code section 2924.13 is constitutional on its face and as applied;

G. A declaration that section 2924.13 applies to nonjudicial foreclosure sales under subordinate mortgages conducted on or after June 30, 2005, where the purchaser was not a bona fide purchaser; or, in the alternative, to every pre-enactment sale conducted after the limitations period expired where no certification was recorded;

H. A declaration that section 2924.13 is an intervening change in law that dissolves any preclusive effect of a judgment entered before June 30, 2025 as to claims founded upon it;

I. An order under section 2924.13(g) and Civil Code section 3412 setting aside the October 16, 2019 sale and cancelling the trustee's deed, or, if the Home has passed to a bona fide purchaser, restitution of Plaintiffs' lost equity;

J. Orders under Federal Rule of Civil Procedure 42(a) and Local Rule 123 coordinating this action with ***Cal. Mortg. Ass'n v. Bonta***, No. 2:25-cv-02614-DAD-CKD, including consolidation if that action is reopened;

K. Further necessary or proper relief under 28 U.S.C. § 2202;

L. Costs of suit and reasonable attorney's fees under 42 U.S.C. § 1988; and

M. Such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

(153) Under Federal Rule of Civil Procedure 38(b) and Local Rule 201, Plaintiffs demand trial by jury of every issue so triable. They further request an advisory jury under Rule 39(c)(1) on the facts underlying any issue triable only to the Court, including the acceleration, the concealment, the servicers' communications, and the purchaser's knowledge.[305]

## NOTICE UNDER RULE 5.1

(154) This complaint draws into question the constitutionality of California Code of Civil Procedure sections 1908 through 1911, and, as applied to Plaintiffs, of Civil Code section 2924 (including subdivision (c)) and Code of Civil Procedure sections 715.010, 715.020, 1161a, 1167, 1170.5, and 1179a. No State officer is a party. Plaintiffs are filing and serving on the Attorney General of California, concurrently with this complaint, a Notice of Constitutional Question under Rule 5.1(a), and they request that the Court certify the question under 28 U.S.C. § 2403(b). The Attorney General may intervene within 60 days.[306]

Dated: September 24, 2026

Respectfully submitted,

**/s/ Michael L. Tusken**
Michael L. Tusken (Cal. Bar No. 175715)
Law Offices of Michael L. Tusken
1510 West Whittier Boulevard, #42
La Habra, California 90631
Telephone: (562) 365-9465
Facsimile: (562) 252-8529
Michael@TuskenLaw.com
**Attorney for Plaintiffs John Akrabian and Marina Akrabian**

305 Fed. R. Civ. P. 38(b), 39(c)(1); E.D. Cal. L.R. 201.

306 Fed. R. Civ. P. 5.1(a)–(c); 28 U.S.C. § 2403(b).

## INDEX OF EXHIBITS

**Exhibit 1** Declaration of Marine (Marina) Akrabian under 28 U.S.C. § 1746, with Exhibits A through P (Index of Exhibits at pages 4–5 of the declaration)

**Exhibit 2** Declaration of John Akrabian under 28 U.S.C. § 1746, with Exhibit Q (surgeon's note of August 2019 and motion and order of September 2019, No. 2:19-bk-17688-VZ) [to be supplied by John Akrabian] and Exhibit R (order of September 18, 2019 barring refiling for 180 days; First Am. Compl. Ex. L, No. 2:23-cv-08709, Dkt. 19-4, Page ID #714–716)

**CERTIFICATE OF SERVICE**

I am employed in Los Angeles County in the State of California. I am over the age of 18 years and not a party to the within action. My business address is 1510 W. Whittier Blvd., #42, La Habra, CA 90631.

On September 24, 2026, I electronically filed the foregoing "Complaint for Declaratory and Equitable Relief; Demand for Jury Trial," with Exhibits 1 and 2, with the Clerk of the United States District Court for the Eastern District of California, Sacramento Division, using the CM/ECF system. Defendants will be served with the summons and complaint under Federal Rule of Civil Procedure 4. On the same date, as a courtesy, I sent a copy by email to the following counsel, who represent Defendants in related proceedings:

| | |
|---|---|
| BUCHALTER, A Professional Corporation<br>Harry W.R. Chamberlain II<br>Jason E. Goldstein<br>Robert S. McWhorter<br>Jarrett S. Osborne-Revis<br>Katharine H. Falace<br>500 Capitol Mall, Suite 1900<br>Sacramento, CA 95814<br>hchamberlain@buchalter.com;<br>jgoldstein@buchalter.com;<br>rmcwhorter@buchalter.com;<br>josbornerevis@buchalter.com;<br>kfalace@buchalter.com | Counsel for California Mortgage Association, United Trustees Association, and ZBS Law, LLP in *Cal. Mortg. Ass'n v. Bonta*, No. 2:25-cv-02614-DAD-CKD |
| WRIGHT, FINLAY & ZAK, LLP<br>T. Robert Finlay<br>4665 MacArthur Court, Suite 200<br>Newport Beach, CA 92660<br>rfinlay@wrightlegal.net | Counsel for plaintiffs in *Cal. Mortg. Ass'n v. Bonta* |
| Bradford E. Klein<br>ZBS Law LLP<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>bklein@zbslaw.com | Counsel for West Coast Servicing, Inc., West Coast 2015-4 LLC, and ZBS Law, LLP in No. 25-6099 (9th Cir.) |
| Carter M. Jansen, Deputy Attorney General<br>Office of the Attorney General<br>300 South Spring Street, Suite 1702<br>Los Angeles, CA 90013-1230<br>carter.jansen@doj.ca.gov | Counsel for the Attorney General in *Cal. Mortg. Ass'n v. Bonta* (courtesy copy; Rule 5.1 notice served separately) |

[X] (FEDERAL) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on September 24, 2026, at Rowland Heights, California.

**/s/ Michael L. Tusken**
Michael L. Tusken

# EXHIBIT 1

## Declaration of Marina Akrabian, with Exhibits A–P

# EXHIBIT 2

## Declaration of John Akrabian, with Exhibits Q–R